· ROBERT DEVINE *vs.* ST. PAUL & SIOUX CITY RAILROAD
COMPANY.

May 19, 1875.

Construction of General Law and Defendant's Charter as to Fences.—The charter
of the St. Paul & Sioux City Railroad Company provides that the company,
"within two years after the completion of their road through any improved
land, shall build, keep and maintain a legal fence, on each side of their road,
through such improved land." *Held*, 1. That defendant is one of the cor-
porations referred to in Laws 1872, ch. 25, § 4, so that its duty to fence is gov-
erned by the charter provision above referred to; and so that Laws 1872, ch.
25, §§ 1, 2, 3, providing that "all railroad companies in this state" shall,
within six months after the passage of said chapter, build, or cause to be built,
good and substantial fences on each side of their roads, are not applicable to
defendant. 2. That the duty of fencing, imposed by the charter provision
aforesaid, is a duty imposed only with reference to the owner of the im-
proved land required to be fenced, or to those who rightfully occupy or use
the same.

Appeal by defendant from a judgment of the district
court for Scott county, the action having been tried before
*Chatfield*, J., and a jury.

*John L. Macdonald*, for appellant.

*R. A. Irwin*, for respondent.

BERRY, J. This action is brought to recover the value of
three horses and a colt, property of plaintiff, alleged to
have been struck by a locomotive running upon defendant's
railroad, and thereby killed, or so injured as to be worthless.

There is no evidence in the case tending to show any
negligence in the management of the train. The only
ground on which it is sought to charge the defendant is for
negligence in not maintaining a proper fence on the side of
its road. Chapter 25, Laws 1872, enacts as follows : " Sec-
tion 1. All railroad companies in this state shall, within six
months from and after the passage of this act, build, or
cause to be built, * * * good and substantial fences
on each side of such road. Section 2. All railroad com-
panies shall be liable for domestic animals killed or injured
by the negligence of such companies, and a failure to build

and maintain * * * fences, as above provided, shall be deemed an act of negligence on the part of such companies." Section 3 prescribes and regulates the costs and disbursements to be recovered in actions against " any railroad company " for killing or injuring a domestic animal. Section 4 reads as follows : " Any company or corporation, owning and operating a line of railroad within this state, and which company or corporation has failed and neglected to fence said road, * * * as required by the terms of its charter and the amendments thereof, shall hereafter be liable, in case of litigation, for treble the amount of damages suffered by any person in consequence of such neglect, to be recovered in a civil action, or actual damage if **paid** within ten days after notice of such damage."

The rule of liability thus prescribed is not only entirely different from the rule irrespective of statute, but also entirely different from the rule contemplated by § 3, and the inference is irresistible that the two sections were not intended to apply to the same class of railroad corporations, but that § 4 has reference to such companies only as have failed and neglected to fence as required by the terms of their charters and the amendments thereof, while § 3 has reference to other companies only. And although §§ 1 and 2 are, in terms, applicable to all railroad companies, we are of opinion that the proper interpretation of the act, as a whole, confines their application to the same companies referred to in § 3. In other words, § 4 is to be read as an exception to the general provisions of the preceding sections —an exception having the effect to prescribe a peculiar rule for the class of companies therein designated, and to take them out of the operation of §§ 1, 2 and 3.

On any other construction of the chapter the class of companies designated in § 4 might, for the same act of negligence in failing to build and maintain a fence, be liable to the same person for single damages and extra costs in one action under §§ 1, 2 and 3, and for treble damages in

another action under § 4. A construction leading to a result so unjust and unreasonable is not to be adopted unless it is a necessary construction, as it certainly is not in this case.

It is further to be observed that if §§ 1, 2 and 3 were intended to apply to the companies designated in § 4, it is difficult to see why the special provisions of the charters of those companies respecting fencing should have been referred to, since §§ 1, 2 and 3, if applicable to them, would have imposed upon them the duty of building all the fence which they could build—viz., a fence on each side of their roads along their entire length—and the charter provision could have done no more, and, in fact, did less. In other words, why was the lesser liability, imposed by the charters, referred to and preserved unless it was intended that it should be exclusive of the greater liability prescribed by §§ 1 and 2, which would have included the lesser, and rendered its preservation superfluous.

The defendant's charter is found in Sp. Laws 1864, ch. 1, sub-ch. 2, by § 2 of which it is provided that the Minnesota Valley Railroad Company, (of which defendant is successor,) " within two years after the completion of their road through any improved land, shall build, keep and maintain a legal fence, on each side of their road, through such improved land." From what we have before said, it follows that the defendant is one of the corporations referred to in § 4. So far as the duty of fencing is concerned, the only neglect for the consequence of which the company would be liable, in a case like this at bar, would be the neglect to build, keep and maintain a legal fence, on each side of its road, through any improved land, within two years after the completion of its road through the same. To charge the defendant with neglect in the matter of fencing, it would, therefore, be necessary, in the first place, to show neglect to build, keep and maintain the same, through improved land, within the time mentioned. In the case at bar we discover no evidence tending to show that the fence, through the insufficiency of

which it is claimed that plaintiff's animals came upon the track, was upon improved land. The want of this evidence disables the plaintiff from recovering in this action.

But, further, from the fact that it is improved land only through which the defendant is required to fence, we think it is to be inferred that the duty of fencing is a duty imposed only with reference to the owner of such land, or to those who rightfully occupy or use the same. No reason can be given why the obligation to fence should be confined to improved lands except upon this theory. If we are right, even if the land the neglect to fence which is complained of, had appeared to be improved land, the want of any evidence in this case tending to show that plaintiff was the owner of the same, or in its rightful use or occupation, would preclude his recovery.

Judgment reversed.