MICHAEL FLEMING, Administrator, *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

August 24, 1880.

**Railroads—Statute requiring Fences.**—Laws 1876, *c.* 24, §§ 1–3, (Gen. St. 1878, *c.* 34, §§ 54–56,) entitled "An act to compel all railroad companies within this state to build proper cattle-guards and fences," and the amendment of section 4 of said chapter, found in Laws 1877, *c.* 73, (Gen. St. 1878, *c.* 34, § 57,) are applicable to the St. Paul & Duluth Railroad Company.

**Same—Injury to Animals.**—The latter portion of section 55, declaring a. failure to build and maintain cattle-guards and fences an act of negligence, has reference only to the case of killing or injuring domestic animals.

**Same—Injury to Employes through Failure to Fence.**—Section 57 makes: failure to fence, etc., negligence *per se*, and makes the company operating the road liable for all damages *to person or property* resulting therefrom, subject to such qualifications as the general rules of law impose in analogous cases. As, for instance, in the case of injury to a fireman in the employ of a railroad company in consequence of the throwing of a train from the track by running over a cow which had come upon the track, through the lack of a fence, the general liability of the company for damages under section 57 is subject to the qualification that it is competent for an employe to assume the risks of the company's service as he finds it. So that, if he enters and continues in such service, knowing that the road is not fenced, he cannot recover for an injury of the kind mentioned.

Appeal by plaintiff from an order of the district court for Ramsey county, *Wilkin, J.,* presiding, refusing a new trial.

*Davis, O'Brien & Wilson,* for appellant.

*James Smith, Jr.,* for respondent.

BERRY, J. This is an action for the recovery of damages for the defendant's negligence in occasioning the death of plaintiff's intestate, who was a fireman in defendant's employ. The locomotive upon which he was at work was thrown from the railway track by running over a cow, which had come upon the track at a place where the road had never been fenced, and he was thereby killed, in October, 1877. The only act of negligence claimed is defendant's failure to have its road fenced "at or near the place of the accident." It was admitted that the defendant's road was not and never had been fenced in the vicinity of the accident; that both defendant and the intestate were aware of this fact for a long time before the latter was killed; and that the intestate had been engaged on the road as a fireman for more than four years. Upon this state of facts, the action was dismissed by the district court, upon defendant's motion.

As is admitted by defendant's counsel, the charter and amendments under which the defendant exists and acts, con-

tain no requirements as to fencing.   The defendant, and the companies to whose franchises it has succeeded, were not embraced in Laws 1872, *c.* 25, § 4, and therefore do not come within the case of *Devine* v. *St Paul & Sioux City R. Co.*, 22 Minn. 8.   To the defendant, then, Laws 1876, *c.* 24, §§ 1–3, (which is a re-enactment of the act of 1872,) are applicable, as is also the amendment of section 4, found in Laws 1877, *c.* 73.   These acts now stand in Gen. St. 1878, *c.* 34, as sections 54 to 57, inclusive.   Section 54 requires that all railroad companies in this state shall, within six months from and after the passage of this act, (March, 1876,) build, or cause to be built, good and sufficient cattle-guards at all wagon crossings, and good and substantial fences on each side of such road.   Section 55 makes all railroad companies liable for domestic animals killed or injured by their negligence, and declares a failure to build and maintain cattle-guards and fences, as before provided, to be an act of negligence.   Section 56 regulates the recovery of costs to be paid in actions against such companies for killing or injuring domestic animals.   Section 57, which is the amendment of 1877, provides that "any company or corporation operating a line of railroad in this state, and which company or corporation has failed or neglected to fence said road, and to erect crossings and cattle-guards, and maintain such fences, crossings and cattle-guards, shall hereafter be liable for all damages sustained by any person in consequence of such failure or neglect."

We are of opinion that the latter portion of section 55, declaring a failure to build and maintain cattle-guards and fences an act of negligence, has reference only to the case of killing or injuring domestic animals.   But the effect of section 57 is to make failure to fence, etc., negligence *per se*, and to make the company operating the road liable for all damages resulting therefrom.   The liability is not limited to one for damages to domestic animals, but it is a liability for all damages, to person or property, which are sustained by any per-

8

son in consequence of such failure or neglect. *Gillam* v. *Sioux City & St. Paul R. Co.*, 26 Minn. 268. If a car should be thrown from the track by running upon some domestic animal, which had come upon the track in consequence of the want of a proper fence, and a passenger should be injured thereby, no reason is perceived why the company operating the road would not be liable under these provisions of statute. The contract of a common carrier with a passenger is to use the greatest care and foresight for his safety, and to avoid the slightest neglect. *McLean* v. *Burbank*, 11 Minn. 189 (277.) Negligence, whether in failing to fence or in any other respect, is a breach of contract. This contract liability cannot be stipulated away. *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn. 125.

But the contract with an employe is entirely different. While it is the duty of a railway company to its servants to provide suitable instrumentalities for the operation of its road, it is competent for the servant to assume the risk of unsuitable and inadequate instrumentalities. If the servant enters upon and continues in the service of such company, with knowledge of the unsuitableness and inadequacy of the instrumentalities furnished for the operation of the road, it is his own negligence and disregard of safety, and he assumes the risks of the service as he finds it. This is not against public policy, for while public policy is concerned for the safety of human life and limb, it will not offer a premium for negligence or recklessness, by relieving a servant who voluntarily, and with open eyes, undertakes a service under the circumstances mentioned, from the consequences of his own folly, by charging them upon his employer. One of the most effectual ways to discourage such negligence and folly, and thereby to prevent injurious consequences, both to the servant and to others upon the train, whether fellow-servants or passengers, is to throw the whole risk in such cases upon the servant himself. The power of an employe to assume the known risks of his employment, and the consequent exemp-

tion of the master from liability in such cases, is well settled in law.

We do not think it was the intention of the legislature, in section 57 before cited, to abrogate this. The design of the statute was to impose a general liability upon a company operating a railroad without a fence, subject to such qualifications as the settled rules of law impose in analogous cases. Nothing short of an explicit declaration to the contrary, or, at least, exclusive implication, would warrant a different conclusion. In harmony with this view of the statute we have held, in *Whittier* v. *Chicago, Mil. & St. Paul Ry. Co.*, 24 Minn. 394,—see, also, S. C. 26 Minn. 484,—with regard to Laws 1872, *c.* 25, § 2, which is identical with section 55, that contributory negligence on the part of the owner of cattle killed by a railway train, consisting in his assent and agreement to dispense with a fence, relieved the company from liability under that section, which declares that the failure to build and maintain a fence shall be negligence, and that the company shall be liable for domestic animals killed or injured by their negligence. We think that the chief design and effect of section 57 are to declare that the failure or neglect of a company operating a railroad to fence its road, and to erect crossings and cattle-guards, and to maintain such fences, crossings and cattle-guards, is negligence *per se;* and, as a rule of law, it would follow by inference that, for the consequences of such negligence, the company would be liable in damages to parties injured. In declaring such liability, the statute has not, however, in our opinion, intended to do more than to declare it, subject to the general rules of law in regard to liability for negligence. See *Curry* v. *Chicago & Northwestern Ry. Co.*, 43 Wis. 665.

Order affirmed.