## Patton v. The Central Iowa R'y Co.

1. **Railroads:** INJURY TO EMPLOYE: DUTY OF COMPANY AS TO FENCES. CURVES AND GRADES. A railway company does not owe to its employes the duty of fencing its right of way, nor of constructing its road with any other grades or curves than it sees fit; and when one enters its employment, he assumes whatever risks there may be in consequence of the road's not being fenced, or of its peculiar construction as to grades and curves. (See opinion for authorities.) [BECK, J., *dissenting*.]

2. ———: ———: DUTY OF COMPANY TO WARN AGAINST CATTLE IN PASTURE. Where a railroad runs through a pasture, and the right of way is not fenced, cattle may be expected anywhere, and the company cannot be charged with negligence in failing to inform a new employe that cattle had frequently been encountered at a particular place in the pasture, and might be expected there.

*Appeal from Cerro Gordo District Court—*HON. G. W RUDDICK, Judge.

FRIDAY, OCTOBER 28.

ACTION to recover for a personal injury. There was a trial to a jury, and verdict and judgment were rendered for the defendant. The plaintiff appeals.

*Richard Wilber* and *Card & Montague*, for appellant.

*A. C. Daly, Blythe & Markley* and *John Cliggitt*, for appellee.

ADAMS, CH. J.—At the close of the plaintiff's evidence the defendant moved that the court direct the jury to render a verdict for the defendant. The court sustained the motion, and directed the jury accordingly, and the plaintiff assigns the ruling of the court as error. The plaintiff was employed as a fireman on one of the defendant's freight trains. While so employed upon one of his trips, the engine struck two cattle standing on the track, and became derailed and capsized. The defendant's negligence is alleged to consist in constructing its road with an improper curve, and improper

1. RAILROADS: injury to employe: duty of company as to fences, curves and grades.

grade at the point in question, and in not fencing against cattle, and in not warning him of the liability of encounter-ing cattle at that point. The country was broken and hilly, and used for pasturage. The curve in the track at the place of the accident was six degrees, and the grade was 58.8 feet in a mile. About forty head of cattle were in the pasture, and they had frequently been encountered near the place of the accident, and eight had been killed. The grade and curve were less than half as great as have been used upon other roads, and do not appear to have been greater than was rendered necessary by the topography of the country. The plaintiff was not very familiar with the road, though he had been over it before. He had an opportunity to know the character of the ground, and the fact that it was used as a pasture, but does not appear to have known much about the number of cattle pastured there, nor the fact that they had frequently been encountered near the place in question. No information had been given him by the defendant in respect to the grade, curve or cattle.

The foregoing are the essential facts upon which the defendant's negligence is predicated. We cannot say that they have any tendency to show negligence. It may be that it would have been safer for the defendant's employes if the right of way had been fenced. But it has never been held, so far as we are aware, that a railroad company owes to its employes the duty of fencing its right of way. It is com-mon, we believe, for railroad companies to omit, for a time at least, to fence their right of way in some places where it might fence. They must, we think, be allowed to determine for themselves whether they will fence in all places where they might. Employes who are employed to operate the road are supposed to contract to operate it in its unfenced condition so far as it is unfenced. Whatever additional exposure there may be is so common and patent that they must be presumed to have taken it into consideration, and to have required that their compensation be graduated accordingly.

The question as to the liability of a railroad company to an employe by reason of a want of a fence, where there is no statutory nor contract obligation to fence, and where the employe knew that there was no fence, is not a new one. The rule which we have expressed may be considered as settled. In *Sweeny v. Central Pac. R'y Co.*, 57 Cal., 15, the plaintiff's husband, acting as conductor, was killed under circumstances similar to those under which the plaintiff in the case at bar was injured. An instruction was approved which was given by the court below in these words: "If I understand the position of the plaintiff's counsel, it is this: That the defendant failed in its duty to its employes by not fencing its railroad track; that it was negligent in this respect, and the death of Sweeney is due directly to this negligence, and that to an action of this kind it is no defense that Sweeney had full knowledge of this particular negligence, and equally with the defendant well knew the danger that might flow therefrom; in other words, that a risk cannot, under any circumstances, be naturally incident to the employment if it be incurred through the negligence or want of care on the part of the employer. This, as it seems to me, is stretching the principle beyond its legitimate limits. As I understand it, one may engage in and conduct a dangerous business, provided it be one not prohibited by law, and to assist him may employ another without incurring a responsibility to such employe for injuries sustained in such hazardous business, provided the danger or risk be equally known to both. In such case the servant voluntarily entering upon an employment, the dangers and hazards of which are well known to him, must be held to have assumed the consequences of such risks."

In *Fleming v. St. Paul & Duluth R'y Co.*, 27 Minn., 111; S. C., 6 N. W. Rep., 448, the plaintiff's intestate was acting as fireman in operating the defendant's road, and was killed under circumstances similar to those under which the plaintiff in the case at bar was injured. A recovery was

sought under a statute which provides that " any company or corporation operating a line of railroad in this state, and which company or corporation has failed or neglected to fence said road, * * * shall hereafter be liable for all damages sustained by any person in consequence of such failure or neglect." It was held that the plaintiff could not recover under the statute. The court said: "If the servant enters upon and continues in the service of the company with knowledge of the unsuitableness and inadequacy of the instrumentalities furnished for the operation of the road, it is his own negligence, and he assumes the risk of the service as he finds it. * * * The power of an employe to assume the known risks of his employment, and the consequent exemption of the master in such cases, is well settled in law."

In 1 Redf. R. R., 492, the author states the rule as follows: " Railways are not bound to maintain fences upon their roads so as to make them liable to their own servants for injuries happening in consequence of the want of such fences; and where the statute makes them liable for all injuries done to cattle by their agents or instruments until they fence their road, the liability extends only to the owners of such cattle, and this liability is the only one incurred."

In *Wells v. Burlington, C. R. & N. R'y Co.*, 56 Iowa, 524, the plaintiff's intestate was acting as brakeman on the defendant's road, and was killed by reason of the top of a bridge being too low, but of which bridge he had knowledge. It was held that he waived the company's negligence. BECK, J., in delivering the opinion of the court, said: " The defendant asked the court to instruct the jury to the effect that if they found the service of the intestate as brakeman upon the route where he was employed was hazardous on account of the bridge being of insufficient height, of which he had knowledge while employed upon this part of the road, and he continued in the defendant's service without objection, the law in such case is that

he assumed the dangers incident to the service resulting from the bridge : in question, and his administratrix, therefore, cannot recover on account of his death. The court refused to give this instruction. It should have been given. The rule of the instruction is announced in *Perigo v. Chicago, R. I & P. R'y Co.*, 52 Iowa, 276; *Muldowney v. Ill. Cent. R'y Co.*, 39 Id., 615; *Kroy v. Chicago, R. I. & P. R'y Co.*, 32 Id., 357; *Way v. Ill. Cent. R'y Co.*, 40 Id, 341; *Lumley v. Caswell*, 47 Id., 159." The, principle involved in the case from the opinion in which we have made the foregoing quotation is precisely like that involved in the case at bar, and we are not aware that any court has ever held to the contrary.

We think that the same must be said in regard to the grades and curves. It is the right of every railroad company to construct its road as it shall see fit, in regard to grades and curves. It is a question of engineering, to be decided in view of the cost of construction and business, etc.

One alleged ground of negligence is that the plaintiff, though almost a stranger to the road, was not notified by the company that cattle had been frequently encountered near the place of the accident, and might be expected to be there. But where a railroad runs through a pasture, and the right of way is not fenced, cattle may be expected anywhere. Safety is to be secured by maintaining vigilance. Such outlook may doubtless be maintained as to prevent ordinarily running over cattle, to the destruction of human life, and the cattle, and other property. It seems to us that it would be a strange rule to hold that railroad companies owe their employes the duty of notifying them at what particular place in a pasture the cattle of the pasture may be expected to be encountered. In our opinion, the court did not err in directing a verdict for the defendant.           AFFIRMED.

2. —: —: duty of company to warn against cattle in pasture.

BECK, J., *dissenting.* I cannot concur in the conclusion announced in the foregoing opinion, to the effect that defend-

ant cannot be held in this action for negligence in failing to fence its railroad track. While there is no law absolutely requiring defendant to fence its road, it is nevertheless its duty to do so when life and property would be protected thereby. The law does not declare just what acts amount to negligence. They are nowhere enumerated. Those acts resulting in injury to persons or property which could have been avoided by due care for the property, rights, and persons of others are negligent, and a liability therefor arises.

Nor can I assent to the doctrine announced in the opinion that plaintiff contracted with defendant to serve in view of the fact that the road was not fenced, and therefore cannot recover for injuries resulting by reason of the absence of fences. We ought not to extend the doctrine that an employe of a railroad engaged in operating a train is presumed to assent to the condition of things connected with the operation of the road and the discharge of his duty, known to him to be defective, and thus to contract to take the risk of such defects, to cases not of like facts with those to which the court has applied it. The doctrine, to say the least of it, in its effects is cruel and oppressive towards the employes who are thus compelled to choose between employment with dangers known to them and idleness with safety. The necessities of nature, bread and raiment will compel them to take even dangerous employment rather than idleness with want. Employers thus hold a whip over their employes, forcing them to perform services attended by dangers arising from the negligent acts of the employers themselves. I am not willing to extend this rule to any extent further than it is carried by the decisions of this court. If we apply it to the facts of this case, there can be no restrictions upon it, and an employe can have no claim for injuries resulting from negligence of the employer of any kind, if that negligence be constant and habitual, and be so known to the employe when he entered into the service.