CardwERR, J.
Charles Hudson was injured while a brakeman upon one of' the defendant’s cars. The case as it stands in this court is; the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, plaintiff in error, against Charles Hudson, defendant in error. Charles Hudson brought his action to recover damages for • injuries he sustained while acting as brakeman upon one of' the defendant’s trains. And in his petition he avers that the-railroad company was taking out a portion of its track to-repair rails and putting in new rails, and that it negligently-performed that duty and that work, and failed to give to the servants proper notice. It says it was negligent in that it did’ this without any notice, knowledge, proper or timely warning ■ of any kind to plaintiff or employes in charge of train No. 96.
The allegations of the petition then are that the company in doing this work was guilty of negligence in the manner and” way in which it did it, and really the negligence amounts; *589 'to the fact that the company was negligent in not giving timely warning to the approaching train, No. 96, of the dangerous condition of its road.
The defendant below, in its answer, says that the plaintiff was the author of his own injury in this language: “That the .injury complained of in the petition was caused by the negli.gence of plaintiff himself, by failing to be at his post when the .signal was given to apply brakes, as required by signal of the engineer, and by jumping from the car which was not derailed.” In other words the company says that he was guilty -of negligence by not being at the brakes when the signal for brakes was given, and by not setting the brake's as diligently, as he should have done, and the case reveals that that is the .same as the first.
And third; that he was guilty of contributory negligence •in jumping from the car at the time he did.
The facts of the case very briefly stated ire about these: That the ■railroad company near-. Wellington, in this state, took up a number of rails from its track and was placing'new rails. A signal was placed about a mile and one-third west of the point where the rails were taken up. This train, No. 96, was approaching from the west on the track; it was a misty, moist day, so that the track was moist. As the train approached, and for some little time before, Hudson, this brakeman, had been riding upon the -engine; he and the engineer both saw a man ahead as they approached within near this mile and one-third; they saw a man upon the track; the engineer at once shut off steam; the brakeman started to go back ov-er the ten-der and over the cars to the point where he was expected to set brakes. When the engineer approached the man on the track he received a signal which caused him to apply the brakes to the three cars next to the engine and tender; they had brakes that were operated by the engineer; he blew the whistle for brakes, for the hand brakes on the train. The ■train was made up of about fifty-two cars, perhaps, if I remember the number right; nearly all of them loaded cars; .very few empty ones.
The three cars next to the engine and tender had air brakes, which were operated and the brakes were set on those three. *590 cars by the engineer; the fourth car back of the engine and tender was a house car on which there were brakes; the fifth car was an oil tank car, and then after that house cars.
•The evidence shows 'that there were in charge of this train the-engineer and his fireman, two brakeman and a conductor. It s.eeims from the evidence that at the time of the approach, the-time the man was seen upon the track who afterwards gave the signal to stop, the brakemen, one of them, Hudson, was in the engine and the other brakeman was in the caboose, and when the signal to stop was given and the whistle blew there were some brakes set; just how many it doés not clearly appear. The engineer applied sand to the track and reversed liis engine, set the air brakes and the train failed to stop before the place was reached where the track was up; the engine went over it on to the track beyond and the cars were piled up in a promiscuous manner, and the brakeman, after he saw that the cars in front of him were going to pieces, leaped from his-car and received very severe injuries.
In trying this case it seems to have been very warmly contested. A number of questions are brought to this court, claiming that the court below erred as against the railroad company, and I will notice a number of these; it is impossible at this time to notice all of them, there are so many in this-record, but I will try to cover the part upon which those that I do not notice depend. There are many of these complaints, that pertain to the same question's of law that arise in a different form simply, in different parts of the record, and by noticing one of them it will be sufficient for all.
I will first notice the complaint on behalf of the railroad company in regard to the refusal to charge as requested by the defendant below. The first is request seven. The court gave that request (it was a lengthy one) in part and refused it in-part. The part refused was this:
“According to the rules of the company the train is controlled by the engineer and brakemen, who are fellow servants, and if the plaintiff and his fellow servants, the engineer and' brakemen, negligently suffered the train to go at a high rate of speed on this descending grade, the plaintiff cannot recover from the defendant on this ground.”
*591 In the first place that request would be misleading, in saying that the train is controlled by the engineer and brakemen, The train is under the control, according to the evidence in this case, of the conductor. But for the management of it, so far as speed is concerned when running or the shutting of the train down when running, is a matter that is almost exclusively under the control of 'the engineer and brakemen, Now this charge would leave it uncertain in the minds of the jury as to which it would refer, to the general management of the 'train or to the handling of the train when in motion, and the tendency of it would have been to mislead.
And then the charge says, “If they negligently suffered the train to go at a high rate of speed on this descending grade, the plaintiff cannot recover from the defendants on this ground.”
That is calling for the jury to make a finding that I find no evidence in this record for them to find upon. That at the time the signal was received to stop the train by the person who had been on the track giving that signal, and by a torpedo, if one was exploded, the evidence is a little contradictory on that. There is no evidence to show that the train was then running at an unwarranted rate of speed, considering the fact that the persons in charge of the train knew nothing of the danger that was ahead of them. And hence the charge calls for a finding of fact that the jury had no evidence upon which to find it. We find there is no error in that.
There is a complaint made because request number nine was not given. Number nine recites three rules of the company, the three rules on which the railroad company depended largely in this action. And then it says:
“I charge you ‘that under these rules the crew in charge of train No. 96, upon which plaintiff was brakeman, were bound to look out for signals to stop, at a distance of thirty telegraph poles from the point where a track might be obstructed or where a train might be delayed, or where a work train might be engaged at work;.and if they permitted the train to run (under the conditions which existed), at such a rate of speed that it could not be stopped in a distance of thirty telegraph poles, they assumed the risk of any danger or accident that might *592 result from the failure to have the train under such control that it could, by reasonable diligence, have been stopped within thirty telegraph poles.”
In other words, this charge means simply this, that one of the rules recited was, that the company, in taking up the rails and doing certain other things, are to place a signal and leave a man with that signal thirty telegraph poles from the point at which the work is being done, and that the company and that the men on the train must all the while run their train in anticipation that the company may be doing such work, and if they do not keep that under such control -that they can stop it in that distance of thirty telegraph poles, that they are guilty of negligence and cannot recover.
The trouble with this charge, taken as a whole, on'e trouble is, that these different rules of the company have been put in evidence, both parties put them in; some of the rule's were put in by the plaintiff below and some by the defendant; there was no question about their being the rules of the company, no question at all as to what they meant, and the court was not called upon to construe any of them. But the question argued below on those rules was this, which rule of two given and put in evidence applied to’ this particular case? The plaintiff below claimed that in a repair of this kind, where a number of rails were to be taken up, it was the duty of the xailroad company to give notice to the superintendent of the road. That was for some purpose as they claim, and a reasonable purpose of that notice would be that he might notify the persons in charge of this train at or near the last station where they stopped, that they might be aware of the obstruction on the track.
And another rule put in by the plaintiff below was to the effect that under such circumstances as the plaintiff claimed existed in this case, that a much longer distance must be provided for between the point of danger and the point where the train should be signalled. Now, this recites a rule that the railroad company depended upon, the one pertaining to thirty telegraph poles, and then stated to the jury, “now if you find that this train was running under these conditions, that the men must all the while keep their train within such control that they could *593 stop it within thirty telegraph poles,” it seems the very thing the jury were to find, which rule applied to this case.
And then it is in language that is hardly proper. “And if they permitted the train to run under those conditions which existed.”
I do not think it is very proper to put in that. The court must state and leave to the jury to find what the conditions are. The jury might find one set of conditions and the judge might have his mind upon another set of conditions, and that is hardly a proper way to instruct a jury. The proper way is to tell the jury as to certain questions of fact, and then say to them if you find these facts so and so, then I say to you the law you shall apply will be so and so.
The next complaint is in regard to request number fourteen.
“The jury are instructed that if they find that the plaintiff as front brakeman, and Tim Saxton, as rear brakeman, on the train in question, or either of them, in violation of the rules of the defendant company, neglected to be upon the top of the train in question while it was descending the grade in question, and they or either of them neglected to use ordinary care and vigilanceinsettingbrakestoaid the engineer in reducing the speed of the train, so that plaintiff might have safely alighted therefrom before the derailment, or that a derailment of said train would not have caúsed plaintiff injury, plaintiff cannot recover in this case and your verdict should be for the defendant.”
I think that the court took care of that part of the law of this case very properly and much better than it is here stated, and that in view of the charge of the court the party has no ground of complaint because that request was not given.
Request number fifteen on the same page: “It was the duty of the defendant company to ordain and establish reasonable rules and regulations for the government of its employes, and if you find that the defendant company had ordained and ■established a code of rules and regulations for the government of its employes, and that the plaintiff entered into and ■remained in the service of the defendant with a knowledge of such rules and regulations,' he must be held to have .-acquiesced therein and agreed thereto, and he can not in this *594 case raise an issue as to the reasonableness and sufficiency of such rules and regulations.”
I do not. understand that any question was raised as to the 'reasonableness of the rules in the evidence. What wa's done-in argument from time to time I do not know, but we think the court charged properly in regard to the rules of the company, when it said that if this rule existed, that the brake'man should be upon the top of the car at the time that he was-in the engine, and if by reason of his not being where he should be this injury occurred to him, he cannot recover. It is-stated much more 'at length in the charge and we think properly.
Request number sixteen: “The jury are‘instructed that if they find that the plaintiff entered and remained in the service-of the defendant company with full knowledge of the rules- and regulations prescribed and established by said company relating to the duty 0f brakemen to be upon the top of their trains when descending heavy grades, and with full knowledge of the requirement's of the rules so prescribed, that in case the-railway track of defendant company should be in any way obstructed, that a flagman should be sent back thirty telegraph poles to warn an approaching, train of danger by exhibiting a signal of danger, and by placing a torpedo upon the track, he-cannot in this-cdse complain that other rules and regulations were not made by defendant company providing for other and' additional notice in such a case.”
The charge seems that the rule providing for a signal to be-given at thirty telegraph poles is the only one that controls in this case and I do not think the court had a right to say that.
Request number seventeen: “The jury are instructed that the defendant company had a right to prescribe as a rule of said company for the government of plaintiff and it's other-employes, that in descending .heavy grades, brakemen upon freight trains should be upon the top of said trains, and if you find that plaintiff with the full knowledge of said rule, at the-time of his injury and while the train upon which he was brakeman was descending a heavy grade between Rochester and Wellington, in disregard of such rule so prescribed by said company remained in the cab of the engine instead of *595 upon the top of said train as prescribed by said rule, he must be held to have voluntarily assumed the risk of injury to himself caused in, whole or in part by his disobedience of such rule.”
Now the court in its charge has given that in better language. The court said to the jury that if a rule required him to be on top of the car and he was not there, and'if the injury occurred by reason of his violation of the rule, that then he cannot recover. Briefly stated that is the charge of the court.
The eighteenth request is complained of: “The jury are instructed that Tim Saxton, the rear brakeman upon the train in question, was a fellow servant of plaintiff, and plaintiff cannot recover against defendant in this case if the negligence of said rear brakeman in whole or in part caused the injury to the plaintiff set forth in the petition.”
That would not be the rule of law.' If the injury occurred by reason of Saxton’s negligence and that of the company combined, he still could recover. The brief in this case treats this as if the court meant to say, by not giving it, that if Sax-ton’s negligence contributed with that of the plaintiff below then he still can recover. Now if the request meant to cover that kind of a case it ought to have stated it, but it is general, that he cannot recover in this case of the negligence of- said rear brakeman in whole or in part. Now it was correct if you take it in whole, if you leave out the “in part,” and the court covered that completely by his charge. But when you say “in part,” that part may have been done by the railroad company, and if the fellow servant and the principal both acting together caused the injury the company is still liable.
The nineteenth request is complained of: “The jury are instructed that conductor John Kelley in charge of the train set forth in the petition, while said train was descending the grade mentioned in the petition, and after signal had been given by the 'engineer to stop the train, and while he was engaged in attempting to stop the train, was a fellow servant of plaintiff, and if the negligence of said conductor in whole or in part, after the signal was given and while engaged in attempting to stop the train, caused the injury to the plaintiff, plaintiff cannot recover in this case and your verdict should be for the defendant.”
*596 There is no part of that right. Kelley, the evidence shows, was the conductor of the train, and as such he was superior to the brakemen. That has been held in this state, and in principle is so again, and subject to the same remarks that I have made to the last request.
I 'think that I have covered substanitally all the groundwork ■of the complaints in regard to these requests. I have looked them all over carefully, and I think in the requests that I have considered all other requests are answered in what I have said as to them.
A complaint is made in this case because the court did not tell the jury what the rules of the company were, that it did not submit to the jury to find what the rules of the company were and that was error. Now, as I have already, stated those rules were put in by both parties; they were taken from the book called “Rule Book;” there was evidence undisputed, in fact almost conceded in the case you may say, that- those were the rules in operation at the time that the plaintiff below received his injury; in fact the plaintiff himself testified to it as being true; he testifies that he had a book of those rules in his possession, and there is no question made by the plaintiff below but that he knew what'the rules were; now that being true, there, was no question made as to the construction of the rules of the company, put in as such. There was no need of the court telling the jury that they were the rules of the company; no occasion for it; there was no occasion for the jury to find that they were the rules of the company.
An attempt had been made, that is, the plaintiff below undertook to offer testimony that this rule as to riding in the engine had been abrogated, had been set aside and abandoned, and that -the brakemen were permitted to ride upon the engine with the knowledge and approval, if not verbal approval, by consent by not objecting on the part of the officers of the railroad company, and the court excluded it in every instance, and the plaintiff below made no headway at all in getting any evidence of that character before the jury. There was probably some talk, but we have noticed carefully what the court said at the different times, and we do not believe that the jury could have been misled in such a way that it became necessary *597 for the court to say to them what the rules were, nor were they called upon to say what the rules were.
And right here I may say -that complaint is made because the rules were written out one at a time and submitted to the-jury to find in their special verdict if such rule, stating it, was a rule of the company. Where there is no evidence to the contrary as to a fact, and the parties have agreed in the trial of -the case orally that it is the rule of the company, and that a certain fact -exists in the case, a party has no ground of complaint if the court says to the jury that they need not find on that question because the rule is in and they admit that it is in writing, and the parties know what it -is.
Now a certain request was made and complaint is also made of the charge as to this point, that if the railroad was doing this work exactly as was provided by the rules of the company for its doing it; leave out now the question as to what rule would apply to this particular work. We then take it as an admitted fact that the railroad company were doing this exactly according to the rules, and that this plaintiff below knew those rules; he knew how it would be done; that he cannot complain because the rule was not sufficient to protect him,, now that is the substance of the complaint that is made: In other words, that if the rules are lived up to by the railroad-company it is exonerated from any damages by reason of injury.
We do not understand that to be the law. The rules of the company when it employs a man in i'ts service become a part of the contract between them, they at once make the servant to understand what the rules are, and his going to work is an-agreement on his part that he w-ill comply with the rules; and if he fails to comply and is injured by reason of such failure, he cannot recover. But how is it with the railroad company; it makes these rules; the brakemen don’t make them; the employes don’t make the rulas; have nothing to do with them; but it is claimed that when an employe goes to work under them he assumes the risk that may be incurred under those rules.
' Now, as I say, the rules become a part of the contract, and it is the public policy of this state, as well as all states nearly, *598 if not entirely all, that a company cannot contract so as to exonerate itself from negligence, and it is put on the ground of public policy; a railroad company is a public corporation, under the control of the state, in all of its affairs, so far as the public interest is in those affairs; and when a railroad undertakes to make a contract that shall exonerate it from its negligence, whether that negligence consists in making a rule that is unsuitable to oroperly protect the employes or- strangers or persons who are riding upon their .trains-, it is against public policy to exonerate the company, and therefore the court took the right view o-f this matter, in the charge, and left it to the jury to say whether or not the railroad company was guilty of negligence in doing its work as it did; and whether it 'complied w-ith the rule, or whether it did not comply, makes no difference, and we believe that is the correct law of this case pertaining to that question.
Complaint is made because some of the questions submitted to the jury were not answered, and we have looked at these questions and examined the evidence with reference to them, and we find that all .the questions in which the jury stated they did not know, or there was no evidence, or answered in any such manner, that we are unable to find anything that would warrant the jury, in most of the cases, no evidence whatever or any offers of evidence, that would warrant, a jury in making a finding. For instance, whether the defendant in error was not in the cab of the engine from the time the train left New Fondon until it reached the point where the signal was given to apply brakes by the engineer, whether they answered that yes or no would make no difference; he was in the engine and the jury have so found at the time they saw a man ahead on the track; and he and the engineer saw that man about the same time, and he started at once to go up to hi® brakes; and after the engineer saw' that the man was giving him a signal then he applied his brakes and did all he could to stop the train. Whether he was on all that distance or not is not an important fact in the case at all, not a controlling fact.
If the defendant below had complained in its answer that he contributed to his own injury by not being on -top of this train and controlling or slackening its speed before this time, there *599 might be some importance in it, but the railroad .company has made no such complaint of him, has not charged him with being guilty of contributory negligence except in not being at his brakes and not promptly applying them and in jumping.
Then they wanted to know how long a time it would take to pass over certain distances, involving complications and figures that were not important at all to the determination of the case.
But the main question relied upon, perhaps; by the railroad company in this case, is that the verdict is against the evidence in the case; that the verdict is not sustained, and that figures down to one little question of evidence. The brakeman, as I have already stated, this plaintiff below, was in the engine at the time that it became necessary to stop this train, and he had to travel from that upon the engine tender, over the tender on top of .the first car, pass over three cars and onto the fourth car before he could set a brake; and the railroad company claims that that was very precious time lost by this brakeman, and they claim that his neglect to be at his post to set brakes the very moment the signal was given to shut down brakes, was time lost; that if he had at that time had his brakes he could have either stopped this train or. he could have slowed down, 'so that he could have gotten off without injury to himself.
And the railroad company claims the same thing in regard to the rear brakeman; there seems to be some evidence that he was in the caboose ,and when the whistle came for brakes it is claimed that he had to mount a car and go to where the brakes were before he could do anything, and that these men were both in violation of the rule of the company, and that this injury occurred to this party by reason of the combined negligence of the plaintiff below and his fellow brakeman who was with him, a fellow servant, and the jury was properly charged that if that was so that he could not recover in this case.
It was claimed on the other side, on behalf of the plaintiff below,, that this train was running at thirty-eight or forty miles an hour; the track was a 'slippery one, and just that kind of moisture that makes the worst track that railroad men 'ever *600 haye, a sort of greasy track, and that he and his fellow brakeman were not at their posts at the very moment, but it took them some time to get there, yet if they had been at their posts-at the time, they could not have set brakes enough so as to. have brought that car to the point where it would have saved this party from'his injury. It seems that the party clung to the-top of the car until his own judgment taught him that he was-likely to go into the wreck with his car among the others that, had gone in, and his judgment at that time taught him to jump from the car. I should judge from his testimony that he-leaped from the top of the car.
Now that question was submitted to the jury by a fair charge-of the court, that if these two brakemen could have brought, that train down to such a rate of speed that the plaintiff could' have escaped without injury, that he could not recover, and the question of fact was, could he and his fellow brakeman. have by their combined efforts, had they been on top of the car,, done that?
There was some evidence on that question, and considerable evidence. The plaintiff offered the evidence of the bralcemen- and the engineer and some other 'evidence upon that subject,., which goes to show clearly that the train could not have been-brought to that point where it would have been entirely safe-brought to that point where it would have been entirely safe,, so that it would have been entirely safe to hav-e jumped from the car.
Then the railroad company offered evidence. The railroad-company undertook to make a facsimile case by taking the-same number of cars and starting a train and undertaking to~ stop it at this particular time, at this particular place; but the-circumstances were not the same, and so far as making it up-to the circumstances of the train that created the injury, they talce the expert testimony of those parties as to whether they could have stopped, had the tra'ck been wet on which the-experiment *was tried, and had other circumstances have existed.
The jury must have been impressed with that testimony in*, about this way: In the train on which Hudson was injured,, there were a number of brakes set, the engine was - reversed,. *601 the track was sanded, and everything was done that was within the power of those parties, except the two brakemen were not right at their places when the signal was given, but the reversing of the engine and the sanding of the track was of that character that the wheels of the engine were worn down flat, where they run over the track, completely locked and sand under them. In the train that was stopped by the experiment, the engine was not reversed at all, nothing was done but to apply, as they claim, three air brakes and setting the brakes on top, the hand brakes, and one of the parties does not know whether that was done or not; they simply arranged that is should be done.
It must have struck the jury as being in some way not a fair experiment in regard to this matter. Then the conditions were different; it was not controlling evidence by any means; all the parties undoubtedly knew just what they were expected to do, and it no doubt makes a great deal of difference about stopping a train as to how the brake is set; if on a wet track, and the brake is set so solid that the wheels slip on the track, there is very little friction. The only way to get friction is to set the brake so tight that the wheel will turn a little and yet all the time keep dragging on the track heavily. If the frack is moist, a sort of moisture gathers between the wheel and the track when it is slipping, and it slides as if running over grease.
The conditions were so different that we do not think that was a controlling matter at all; and the fact is one that is peculiarly within the province of the jury and not within that of the reviewing court. It is a matter that is not demonstrative at all, it cannot be demonstrated; you cannot prove it like adding two and two; after all the testimony in, it is a matter largely of good judgment upon all that evidence. That being true we do not think we can disturb it.
There is no complaint made in this case and a number of exceptions are taken to'the admission and exclusion of evidence. We have examined all of them with- a good deal of -care and we find no error in any of them; but on pages 23 and *602 24 of the record the question is asked of defendant in error, whether'he knew any rule in the book of rules where it Is stated or designated the place where the front brabeman should ride, and he is permitted to answer that he did not. It then says that is an attempt to prove the contents of the book of rules; the book of rules was in writing, and was the' best evidence. I presume that the object of the testimony was to show whether or not lie knew of that rule, but under all the evidence in this case I presume with the jury it would make no difference under the charge of the court whether he knew it or not. We do not think there was any prejudicial •error in that matter, because the rule was afterwards gotten before the jury, and if the intent was to show the rule, why. there could be no prejudice when it came before the jury, the rule itself, and if the testimony was to show he did not know it, the case was so tried that that could have no effect.
Then on pages 122 and 124 Mr. Higgins is asked whether he received any notice from the superintendent of the track as to putting down new steel rails at the place where the wreck occurred. Now there is the rule that the superintendent shall have notice if several rails are to be taken up in making a repair of the track; if only one rail then the thirty telegraph pole rule applies; and it was probable, we have no doubt about it, that it was the duty of the company, by that rule, before taking up this track as they did, to notify •.the superintendent. And that is useless language, unless the .'superintendent is to do something, the object and purpose of notifying him is that he may look out for trains that are .approaching, may adopt some reasonable means of doing it; •so we think it was pertinent to show that they did not give 'him notice.
There is another error complained of. After the special 'findings were made, and the jury had found that Hudson, the plaintiff, was in the engine and not at his place, and must have ■found that he was guilty of contributory negligence, there .3 no doubt but what he was, then the company moved for judgment on those findings. In other words, they say that if he was guilty of contributory negligence, whether or not that negligence was the cause of his injury, he cannot recover. *603 The company claims that if he was guilty of contributory, negligence, that that ends the whole matter.
John T. Dye, B. G. Johnson and B. J. Hackney, for Plaintiff in Error.
Skiles & Skiles and A. R. Webber, for Defendant in Error.
Well, now, that depends, upon this: A party may be guilty of contributory negligence and yet be able to recover if that negligence was not the cause of his injury. We think the court properly submitted this question to the jury, and we believe the law to be, that if his contributory negligence was the cause of his injury he cannot recover; but if that was not the cause, notwithstanding his negligence, it would have happened to him — if he had performed his whole duty under these rules the same results would have happened — then we think that.is not the cause of the injury. This rule of law is universal so far as we know. We know of no exception to it at all; in fact it is elementary, that a party, in order to fail to recover by reason of his own negligence, must in some way have contributed to the injury.
The judgment is affirmed.

John T. Dye, E. G. Johnson and L. J. Hackney, for Plaintiff in Error in the Supreme Court cited:
The court erred in directing the jury not to answer interrogatories as to the rules of the plaintiff in error: 91 O. L., 298; Campbell v. Frank em, 65 Ind., 591; Clegg v. Waterbury 88 Ind., 21; Miller v. School Township, 101 Ind., 503; Weir (City) v. Herbert, 51 Pac. Rep., 582 [6 Kan. App., 596]; Wyandotte (City) v. Gibson, 25 Kan., 236; Cleveland, C. C. & St. L. Ry. v. Eggmann, 71 Ill. App., 42; Baltimore & O. Ry. v. Cain, 31 Atl. Rep., 801 [81 Md., 87]; Topeka v. Boutwell, 35 Pac. Rep., 819 [53 Kan., 20; 27 L. R. A, 593]; Zucker v. Karpeles, 50 N. W. Rep. 373, [88 Mich. 413]; Peninsular Land Transp. Co. v. Franklin Ins. Co. 14 S. E. Rep. 237 [35 W. Va. 666].
Rules of employer for the conduct of his business, when brought to the knowledge of the employe, constitute an element of the contract of service: Pennsylvania Co. v. Whitcomb, 12 N. E. Rep. 380, 385 [111 Ind. 212, 219]; Lake Erie & W. Ry. v. Craig, 9 O. F. D. 589 [80 Fed. Rep. 405]; Atchison, T. & S. F. Ry. v. Reesman, 60 Fed. Rep. 370; Woolsey v. Railway Co. 33 Ohio St. 227, 234.
' An employe, with knowledge of the rules of his employer for the conduct of his business, in which the employe acquiesces by remaining in the service, assumes tire risk of injuries from the method of business prescribed in - such rules and can not recover therefor because another *604 method was not adopted: Naylor v. Railway Co. 11 N. W. Rep. 24 [53 Wis. 661]; Hewitt v. Railway Co. 31 Am. & Eng. R. Cas. 249; Abbot v. McCadden, 51 N. W. Rep. 1079 [81 Wis. 363; 29 Am. St. Rep. 910]; Jolly v. Railway Co. 53 N. W. Rep. 526 [93 Mich. 370]; Wright v. Railway Co. 25 N. Y. 562; Haskins v. Railway Co. 56 N. Y. 608; Pennsylvania Ry. Co. v. Wachter, 60 Md. 395 [15 Am. & Eng. R. R. Cas. 187]; Ladd v. Railway Co. 119 Mass. 412 [20 Am. Rep. 331]; McGrath v. New York etc. Co. 18 Am. & Eng. R. R. Cas. 5; Chicago, etc. Co. v. Donahue, 75 Ill. 106, 110; Behm v. Armour, 15 N. W. Rep. 806 [58 Wis. 1]; Hobbs v. Stauer, 22 N. W. Rep. 153 [62 Wis. 108]; Larson v. Railway Co. 45 N. W. Rep. 722 [43 Minn. 423]; Bengston v. Railway Co. 50 N. W. Rep. 531 [47 Minn. 486]; Hughes v. Railway Co. 6 N. W. Rep. 553 [27 Minn. 137]; Chicago & N. W. Ry. v. Davis 53 Fed. Rep. 61; Olson v. Railway Co. 35 N. W. Rep. 866 [29 Minn, 125]; Clark v. St. Paul, etc, Co, (Minn.) 2 A. & E. R. R. Cases, 240; Railway Co. v. Leech, 41 Ohio St. 388, 391; Northwestern Fuel Co. v. Danielson, 57 Fed. Rep. 915, 918; Texas & Pacific Ry. v. Minnick, 61 Fed. Rep. 635; Louisville & N. Ry. v. Kelley, 63 Fed. Rep. 407, 411; Elliott on Railways, n. 4, section 1296; Indianapolis & St. L. Ry. v. Watson, 14 N. E. Rep. 721 [33 Am. & Eng. R. R. Cas. 334; 114 Ind, 20]; Cincinnati, I. St. L. & C. Ry. v. Lang, 118 Ind. 579 [21 N. E. Rep. 317]; Lake Shore & M. S. Ry. v. Knittal, 33 Ohio St. 468; Mad River & L. E. Ry. v. Barber, 5 Ohio St. 541, 563; Feely v. Pearson Cordage Co. 37 N. E. Rep. 368 [161 Mass. 426]; Whalen v. Railway Co. 72 N. W. Rep. 323 [114 Mich. 512]; Richards v. Rough, 18 N. W. Rep. 785 [53 Mich. 212]; Sullivan v. India Mfg. Co. 113 Mass. 396; Fleming v. Railway Co. 6 N. W. Rep. 448 [27 Minn. 111]; Hughes v. Railway Co. 6 N. W. Rep. 553 [27 Minn. 137]; Songstad v. Railway Co. 41 N. W. Rep. 755 [5 Dak. 517]; Olson v. McMullen, 24 N. W. Rep. 318 [34 Minn. 94]; Carbine v. Railway Co. 17 Atl. Rep. 491 [61 Vt. 348]; Naylor v. Railway Co. 33 Fed. Rep. 801; Whelton v. Street Ry. Co. 32 N. E. Rep. 1072 [172 Mass. 555].
Reasonableness of the rules of the plaintiff in error, for the control' of its servants not a question- of fact for the jury and the court erred' in submitting that question to the jury: Woolsey v. Railway Co. 33 Ohio St. 227, 232; Larow v. Railway Co. 15 N. Y. S. 384 [61 Hun. 11]; South Florida Ry. v. Rhodes, 5 So. Rep. 633 [23 Fla. 40]; Vedder v. Fellows, 20 N. Y. 126; Railroad v. Fleming, 14 Lea (Tenn.), 128; Pierce v. Randolph, 12 Texas, 290; Treacy v. New York, etc. Co. 9 Bos. (N. Y.) 396; Tullis v. Hassell, 54 N. Y. Sup. Ct. 391; Railroad v. Whittemore, 43 Ill. 420; Chicago v. Railroad Co. 84 Ill. 109; Pittsburgh, C. & St. L. Ry. v. Nuzum, 50 Ind. 141 [19 Am. Rep. 703]; Fertich v. Michener, 11 N. E. Rep. 605 [111 Ind. 472; 60 Am. Rep. 709]; Hoffbauer v. Railway Co. 3 N. W. Rep. 121 [52 Ia. 342]; Old Colony Ry. v. Tripp, 33 Am. & Eng. R. R. Cas. 488.
The contributory negligence of the defendant in -error, in failing to-comply with the rule of the company requiring bralcemen to control the speed of trains upon descending grades, should have defeated the-defendant in error: Bennett v. Railway Co. 49 N. W. Rep. 408 [2 N. Dak. 112]; Crew v. Railway Co. 20 Fed. Rep. 87; Wilson v. Railway Co. 53 N. W. Rep. 797 [94 Mich. 20]; Brennan v. Railway Co. 53 N. W. Rep. 358 [93 Mich. 156]; Penna. Co. v. Whitcomb, 12 N. E. Rep. 380 [111 Ind. 212]; International, etc. Co. v. Gray 27 Am. & Eng. R. *605 Cas. 318; Gordy v. Railway Co. 23 Atl. Rep. 607 [75 Md. 297]; San Antonio & A. P. Ry. v. Wallace, 13 S. W. Rep. 565 [76 Tex. 636]; Lacroy v. Railway Co. 30 N. E. Rep. 391 [132 N. Y. 570]; Overby v. Railway Co. 16 S. E. Rep. 813 [39 W. Va. 524]; Louisville & N. Ry. v. Watson, 8 So. Rep. 249 [90 Ala. 68].
The court will look into the record and determine whether there is any evidence tending to support the issues: Ford v. Osborne, 45 Ohio St. 3 [12 N. E. Rep. 526] Dick v. Railway Co. 38 Ohio St. 392; Railway Co. v. Murphy, 50 Ohio St. 135, 142 [33 N. E. Rep. 403].
Brief on petition for rehearing:
The Cleveland, Cincinnati, Chicago and St. Louis Railway Com-' pany respectfully prays the court to grant a rehearing in this case for the following reasons:
1. The court gave to the jury -the request of defendant in error, No. 12 (Record, page 212) :
“Twelfth.' Gentlemen, it is for you to say, under all the rules that Lave been introduced by the plaintiff and the defendant, and under all the evidence and circumstances, taking into consideration,. as I have said, the descending grade, the cut, the condition of the rails, time of •day, kind of train and rate of speed, whether the defendant gave timely, proper and sufficient notice or signal to insure the safety of this train.”
This instruction leaves it.for the jury to say whether timely, proper and sufficient notice or signal was given to insure the safety of this train, under all the evidence and circumstances, taking into consideration the descending grade, the cut, the condition of the rails, time of ■day, kind of train, and rate of speed.
This was equivalent to an instruction to the jury to return- a verdict for defendant in error.
The verdict is made to depend upon the question as to “Whether defendant, under all the evidence and circumstances, gave timely, proper and sufficient notice or signal to insure the safety of this train.”
Of course, if a wreck ensued, the company, under this instruction, is liable.
There is no law in the state of Ohio or elsewhere which requires a. company engaged in repairing its track to insure the safety of its trains.
Railroad companies are responsible to their employes for failure to ■exercise diligence and care. They are not insurers.
Under this instruction a brakeman, who has been injured in a wreck where the track has been taken up for repairs, may recover against the company if the notice to the train crew that the track was ■taken up was not sufficient under all the circumstances to insure the ■safety of the train, and this although: the proximate cause of thie wreck may have been, as we insist it was in this case, the negligence •of the brakeman injured.
This rule not only makes the company liable as an insurer, but as an insurer against the negligence of the party injured.
We modestly submit that this is not the law.
The defendant in error calls attention to the instruction of the court on page 225 of the record (see brief of defendant in error, p. 55), where the court said:
“I say to you as a matter of law, that in the absence of a contract, the master is not in any sense the insurer o-f the safety of its servants.”
*606 “There .is a wide difference,” say counsel, “between insuring the safety of an employe from receiving injuries and insuring the safety of its train. Had the rules been complied with on the part of the company there could have been no question as to the safety of the trains.”
In this case the defendant in error jumped from the train to escape injury from impending wreck. The contention is that the company was bound to give such notice as would insure him against this wreck under the particular circumstances of this particular train. Among the circumstances may have 'been, as plaintiff in error .contends, the negligence of the defendant in error in not being at his post of duty, and in not exercising diligence to control the train on the descending grade as required by the rules. By this instruction the company is an insurer against t'he consequences of the. negligence of defendant in error.
Besides these two instructions: i. That the company must give sufficient notice to insure the safety of the train, notwithstanding the speed and the fact that the brakemen were not at their posts of duty, and did not use diligence to control the train, is inconsistent with the charge, on page 225, that the master, in the absence of contract, is not an insurer of its servants.
“The giving of instructions which are inconsistent with or contradictory to each other is error for the reason the jury will be as likely to follow the good as the bad, and .it can never be known which they have followed; and which way soever they go, if there is an appeal or writ of error, the judgment must be reversed.” Thompson on Trials, sec. 2326, citing many cases, including Pittsburgh, etc. R. Co. v. Krouse, 30 Ohio St. 222-240.
The court charged generally that the company is not, in .the absence of a contract, an insurer of the safety of its servants.
•A contract made by any party, master or servant, relieving it from liability for its own negligence, is void.
Besides, there was no such contract in this case.
It is contended by defendant in error that this instruction is authorized under rule 290, which is as follows (defendant’s brief, p. 10) :
“290. Whenever it is necessary to remove .or replace a rail in the track, or to repair a bridge, culvert, cattle-guard, or structure, or in the event of any cause by which the track is rendered unsafe for the passage of trains, danger signals, red, and torpedoes must be placed fifteen _ hundred yards, thirty telegraph poles, in each direction from the point of danger. A man must remain with the signals until the track is clear, and in case a curve or the summit of a grade is near the point of fifteen hundred yards, the signals must be sent farther’ to insure safety.”
rhis rule contains the language, “In case a curve or the summit of a grade is near the point of fifteen hundred yards, the signals must be sent further to insure safety.”
The element of a curve or summit of a grade near the point of fifteen hundred yards is omitted in the instruction, and the evidence shows clearly without the slightest contradiction, that there was no curve or summit of a grade near the point of fifteen hundred yards from the place where the track was taken up.
*607 Rule 99 is as follows:
“When the train is stopped by an accident or obstruction, the flagman must go back with danger signals to stop .any train moving in the same direction. At the fifteenth telegraph pole from the rear of his train he must place one torpedo on the rail; he. must then continue to-go back to the fiftieth telegraph pole from the rear of his train and place two torpedoes on the rail, ten yards apart (one rail length).” (Record, p. 239.)
Rule 99a is as follows:
“On descending grad s, or other hazardous points on the road, the flagman must go back as much farther than required by rule 99 as will insure safety.”
Rule 99a is a supplement to and a part of rule 99, and it is limited to a case where a train is .stopped by an accident or obstruction. It has no application to the present case.
But even if 99a applied to the present case, it must receive a fair construction. It can not be so .tortured and stretched as to mean that a flagman must go so far back as to insure the safety of the train under all the circumstances of the particular case. He can not know whether the bralcemen are at their posts of duty. He can not know whether they will act promptly and diligently after the signal is given. He can not know whether they have discharged their duty in controlling the speed of the train, under the rule, on a descending grade, nor can he know what the speed of the train is until it reaches him.
This instruction seems so clearly erroneous, that, without waiving the other reasons upon which we insist in our brief that the case should be reversed, we forbear to press them in this petition for rehearing.
We were entitled to a trial in .the common pleas court according to the rules of law. It is not the law that a railroad company engaged in repairing its track must give notice to an approaching train sufficient to insure its safety. The company, or its agent, giving the notice could never know the speed of the train or the degree of care which the train crew used to control the speed of the train in advance, nor whether .the brakemen were at their posts of duty, nor whether the crew would exercise diligence to brine: the same to a stop after the signal was given; and yet the court instructed this jury that they were to determine, from all the circumstances, whether a notice was given sufficient to insure the safety of the train. If the company was bound to insure the safety of the train, the only thing that was necessary for defendant to prove was that the train was wrecked.
The question upon which plaintiff in error .insisted that the negligence of defendant was the proximate cause of the accident is wholly omitted. The jury were at liberty under this charge to find that the notice required byjthe rules of the company to be given in a case of this kind is not sufficient. They are made judges of the reasonableness of the rules.
This error is not cured by any instruction given by the court, and, a.s we have shown, the fact that this instruction may be inconsistent with other instructions given by the court does not .help the case, because this court can not .tell which of two inconsistent instructions the jury followed.
*608 The rules of the company did not constitute a contract with Hudson to insure the safety of the train against ¡his own negligence, and even if such contract had been made,itwouldbeagainst public policy and void.
We are at a loss to understand upon wihat grounds this charge can be sustained. No sufficient reason is suggested in the brief of defendant in error. No opinion was rendered by this court in the case.
We respectfully but earnestly pray for a.rehearing in order that there may be a fair trial of this case according to law,^and that a precedent may not be set which will trouble this court in the future.