[No. 6,216.—Department Two.]

# S. N. SWEENEY *v.* THE CENTRAL PACIFIC RAILROAD COMPANY.

MASTER AND SERVANT—NEGLIGENCE.—A servant voluntarily entering upon an employment, the dangers and hazards of which are known to him, must be held to have assumed the consequences of such risks. *Held,* accordingly, that the defendant was not liable for the death of an employee, resulting from a collision caused by its failure to provide fences along the line of its road, if the deceased knew of the want of fences.

NEW TRIAL—VERDICT "AGAINST LAW"—DEFINITION.—Where a new trial is asked, on the ground that the verdict is against law, and it appears that the jury must either have disregarded the law as given in the instructions of the Court, or else have found a fact wholly contrary to the evidence, the verdict is against law, and it is proper to grant a new trial on that ground.

APPEAL from an order granting a new trial, in the Fourteenth District Court, County of Placer. REARDAN J.

After the decision in Department, the appellant filed its petition that the appeal be reheard in Bank, and the application was denied.

*C. A. Tuttle,* and *J. M. Fulweiler,* for Appellants.

The Court left the question of Sweeney's knowledge of the existence of a fence to the jury. The jury, in effect, found that Sweeney did not know that the road was not fenced. The jury had no way of determining Sweeney's knowledge, except by an inference from his intelligence, and habit of passing over the road. If the jury drew an improper inference from this testimony, it cannot be claimed that the verdict is against law; a verdict which is not justified by the evidence is not against law. (*Brumagim* v. *Bradshaw,* 39 Cal. 24; *Smith* v. *Christian,* 47 id. 18.)

*Hale & Craig,* for Respondent.

MYRICK, J.:

Plaintiff's husband was engineer and conductor of a construction train of defendant, and as such had been for some time, and was at the time of the occurrence herein spoken of, running the train on the road of defendant between Newcastle and

New England Mills. The train had taken a load of gravel up the road, and having unloaded, was backing down to Auburn, to there meet an up-bound freight train. The train reached a point near Clipper Gap, and was running at an increased rate of speed. Sweeney was in charge of the train, and was on the forward car, as backing down, the engine being at the other end. He had taken his position there to look out for danger. Just at the point where the occurrence took place, there is a curve in the road, and in rounding the curve, the leading car ran over two head of cattle, several cars and the engine were thrown from the track, and Sweeney was killed. At that point, the track was not fenced. The other facts necessary to the decision of this case are stated in the opinion of the Court below hereinafter copied. The jury rendered a verdict for the plaintiff for $20,000. Defendant moved for a new trial, which was granted; and plaintiff appealed. In granting the motion for a new trial, the Court below gave its reasons as follows:

"I am now of the opinion, that the motion for a nonsuit, made when the plaintiff rested in chief, should have been granted, as also the same motion, when it was renewed at the close of the whole case, for the following reasons, viz.: The second ground upon which the nonsuit was asked is: 'That it appears, from the testimony introduced by the plaintiff, that the deceased Sweeney had full knowledge of the fact that the road was not fenced at the point or near the point where the collision occurred, resulting in his death; and, having such full knowledge, he, by entering into and continuing in the employment of the defendant, took upon himself the risks and hazards necessarily incident to the service, and that this risk, which resulted in the collision, was necessarily incident to the employment.'

"From the testimony of the plaintiff's witnesses, and as the case stood when plaintiff rested, it would hardly be rational to deny that the deceased had known for months, indeed years, before the accident which caused his death, that the road at and for miles each side of the point where the collision occurred was not protected by fences and cattle-guards; and being an intelligent, reasonable human being, and engaged constantly as a locomotive engineer over this particular portion of the road,

he must be deemed to have known that cattle were likely to intrude upon the track, and that thereby there was danger of just such an accident as resulted in his death.

"It is admitted by plaintiff's counsel, that the employee assumes all the risk naturally incident to his employment; but it is said that the risk here spoken of was not naturally incident to the employment of the engineer Sweeney. If I understand their position, it is this: that the defendant failed in its duty to its employees by not fencing in the railroad track; that it was negligent in this respect, and the death of Sweeney is due directly to this negligence; and to an action of this kind it is no defense that Sweeney had full knowledge of this particular negligence, and equally with the defendant well knew the danger that might flow therefrom; in other words, that a risk cannot, under any circumstances, be naturally incident to the employment if it be incurred through the negligence or want of care on the part of the employer. This, as it seems to me, is stretching the principle beyond its legitimate limits. As I understand it, one may engage in and conduct a dangerous business, provided it be one not prohibited by law; and to assist him may employ another, without incurring a responsibility to such employee for injuries sustained in such hazardous engagement, provided the danger or risk be equally known to both. In such case, the servant voluntarily entering upon an employment, the dangers and hazards of which are well known to him, must be held to have assumed the consequences of such risks, because they then become naturally incident to the employment.

"An engineer of a locomotive is unquestionably entitled to have an engine as safe and as perfect as human skill and prudence can produce; and if he sustain an injury by reason of some defect or imperfection which was known to, or should have been known to, his employer, and of which he neither had nor could readily obtain any knowledge, he could have his remedy against the employer; for then he had the right to rely upon the presumption that such employer had performed his whole duty in that behalf, and the risk he incurred was not one that he could reasonably anticipate, nor was it naturally incident to the employment. But, on the other hand, if the em-

ployer disclosed to his employee the defect of the machine which made it dangerous, or it was well known to him, and he still voluntarily engaged in the employment, he assumed the consequences of the danger he incurred, and by his own carelessness and recklessness contributed directly to the injury sustained by him; the risk was reasonably and naturally incident to his employment.

"I instructed the jury in the following language: 'If the jury believe from the evidence that the deceased, Edward Harry Sweeney, did, before the collision which resulted in his death, know that the road over which he had to run his train, or any considerable portion of it, including the place where the collision occurred, was not fenced or provided with cattle-guards, and that cattle might stray thereupon and cause him injury, he must be deemed to have assumed the risk of employment, and the plaintiff cannot recover, and your verdict should be for defendant.' I also told the jury, that, 'before the plaintiff can recover in this case, the jury must be satisfied from the evidence: (1) That the deceased Sweeney came to his death in consequence of defendant's neglect to erect fences or cattle-guards along its line of road; (2) that defendant knew that the road was not provided with fences or cattle-guards, and the same, and service thereon, were therefore dangerous; and also (3) that the deceased Sweeney did not know of said unprotected condition of the said road, or the danger to which he was exposed in consequence thereof.'

" Assuming that these instructions state the law of the case so far as the jury was concerned (and I have no doubt that for the purposes of this motion it must be so assumed), the question now arises, Is the verdict against law? With the views I entertain, and have hereinbefore expressed, I have no hesitation in saying that it is clearly against law; and for the reasons already given, it is, in my opinion, opposed to both law and evidence.

" The jury must either have found that Edward Sweeney was ignorant of the unprotected condition of the road, or wholly disregarded the instructions of the Court.

" That Sweeney did not possess the knowledge mentioned in the instructions, the jury were not at liberty to find from the

evidence; upon this point, it was full and conclusive, and without the least conflict. Contradiction of it was not even attempted. It was shown by the testimony that he was a careful engineer and an intelligent man, and as engineer of a locomotive had been running over this particular division of the road for two years and a half continuously next preceding his death, and for the last four months of that time as engineer and conductor of the gravel train, of which he was in charge at the time of his death, traveling over this particular portion of the road several times a day.

"There is no question here of conflict of evidence or preponderance of evidence; on this point, it is all one way."

We agree with the views of the learned judge who presided in the Court below, so far as applicable to the points in controversy. We are of opinion that the rule of law governing this case is therein correctly stated.

Order affirmed.

THORNTON, J., and SHARPSTEIN, J., concurred.