## BODELL *v.* THE BRAZIL BLOCK COAL COMPANY.

[No. 2,901. Filed December 11, 1900.]

PLEADING.—*Master and Servant.—Personal Injuries.—Defective Appliances.*—Where in an action for personal injuries to an employe caused by defective appliances it is shown by the complaint that the defect was open and obvious, and it is not shown that the complaining party had no opportunity to observe it, an averment of want of knowledge is insufficient. *pp. 655, 656.*

NEGLIGENCE.— *Violation of Statutory Duty.— Contributory Negligence.—Damages.—Master and Servant.*—In an action by a coal mine employe for personal injuries caused by a breach of the statutory provision requiring the cages used in mines to be securely covered, the mere fact that there was a violation of a statutory duty does not relieve plaintiff from showing that he exercised due care. *pp. 656, 657.*

SAME.—*Violation of Statutory Duty.—Action.—Mines.—Damages.—Master and Servant.*—An action may be maintained for injuries

sustained by a coal mine employe caused by the failure of the company to keep cage used in mine securely covered as required by §7469 Burns 1894, although the employe was not ascending or descending the shaft when injured. *pp. 657-662.*

From the Clay Circuit Court. *Affirmed.*

*E. S. Holliday, F. A. Horner* and *J. A. Smith,* for appellant.

*G. A. Knight,* for appellee.

ROBINSON, J.—Appellant's complaint avers that he was employed by appellee corporation as a "cager" in its mine, in which more than ten men were employed; that it was appellant's duty to pull the empty cars from the cage or elevator at the bottom of the shaft where he was stationed, and push the loaded cars upon the cage to be hoisted to the top; that these carriages or cages were also used for lowering and hoisting persons into and out of the mines; that it was appellee's duty to provide a sufficient covering overhead for these cages to prevent injury to persons ascending and descending upon such cages and to prevent injury to persons engaged in loading and unloading the same at the bottom of the mine; that the place where appellee was working was far underground and dimly lighted; that it required all his strength and the concentration of all his faculties to place properly a loaded car in position upon the cage; that his duty required him to watch closely the car he was thus pushing upon the cage and while thus engaged he believed and rested in the belief that appellee had provided a covering for the cage and had no notice or knowledge to the contrary; that appellee had not provided a sufficient covering in this, that the covering for the cage did not project to the sides of the cage, but a large portion of the cage was left uncovered, all of which appellee knew or might have known by reasonable diligence; that in pushing the loaded car upon the cage it was necessary for appellant to place his hands upon the top of the rear end of the car; that just as he had placed the car on the cage and while engaged in

putting it in position, and while his hands were upon the car where they would have been protected had the top of the cage been covered, a large lump of coal fell from the top of the shaft and because of no covering upon the top of the cage struck appellant's hand whereby he was injured; that the injuries occurred without appellant's fault, but by reason of the above mentioned negligence of appellee. Sustaining a demurrer to this complaint is assigned as error.

The rule is well settled that if a defect in an appliance is open and obvious alike to the master and the servant, and the servant voluntarily continues in the service, the risk of an injury from such defect is his own. He can assume the risk of a latent danger only when he knows of it. But where the defect is open and obvious and the complaining party does not show that he had no opportunity to observe it, an averment of the want of knowledge is not enough. If he could have seen an open and apparent defect by looking, the law requires that he shall look. He can not fail or refuse to use his eyes and then be heard to say that he did not know. The test is, not whether he did comprehend the danger, but whether he ought to have comprehended it, and he is chargeable with a knowledge of such dangers as he might have known by exercising ordinary care. If the defect or danger is open and obvious, though it exists through the employer's negligence, an employe of mature years will be presumed to have knowledge of it, and though the employer may have been negligent in the matter, the employe is also guilty of negligence in accepting or continuing in the service, and this becomes equivalent to contributory negligence which prevents a recovery. *Hoosier Stone Co.* v. *McCain,* 133 Ind. 231; *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156; *Ames* v. *Lake Shore, etc., R. Co.,* 135 Ind. 363; *Sheets* v. *Chicago, etc., R. Co.,* 139 Ind. 682; *Salem-Bedford Stone Co.* v. *Hobbs,* 144 Ind. 146; *Peerless Stone Co.* v. *Wray,* 143 Ind. 574.

But it is argued that under what is known as the coal

mining statute the doctrine of assumption of the risk or of contributory negligence does not apply; that where a person is injured through a breach of statutory duty imposed, the doctrine of assumption of the risk does not apply, and that where a servant continues in the employment with the knowledge of such a breach of such duty and is injured, he may recover for such injury. The mere fact that there has been a violation of a statutory duty does not relieve the injured party from exercising due care. · The failure of a railroad company to observe its statutory duty and as an engine approaches a crossing sound the whistle or ring the bell, does not excuse the traveler from exercising care as he approaches a crossing. *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576, and cases cited.

Section 9 of the act of June 3, 1891, §7469 Burns 1894, §5480j Horner 1897, provides: "That the owner, operator, agent, or lessee shall cover the cages with one-fourth (1-4) inch boiler plate, so as to keep safe as far as possible persons descending into and ascending out of such shaft, and no person shall descend any shaft when coal is ascending on the other cage." Section 7483 Burns 1894, §5480y Horner 1897, provides a penalty for the violation of any of the provisions of any action of the act. Section 7473 Burns 1894, §5480n Horner 1897, reads: "That for any injury to person or persons or property occasioned by any violation of this act, or any wilful failure to comply with any of its provisions, a right of action against the owner, operator, agent or lessee shall accrue to the party injured for the direct injury sustained thereby."

We can not agree with counsel that because appellant was not ascending or descending the shaft and had not gone into the cage for that purpose, that he could have no right of action under the statute. The strict letter of these sections might thus limit their application. But the manifest intention of the whole act is to protect persons working in coal

mines. It is a familiar rule that that which was within the intention of the legislature is within the statute although not strictly within its letter. The general scope of the whole statute is not limited to protecting persons only when going up or down the shaft. When the above sections were enacted the legislature, as shown by the scope and title of the act, was considering the question of regulating the working of coal mines, the weighing of coal, providing for the safety of employes, protecting persons and property injured. See Acts 1879, p. 19; Acts 1891, p. 57. Applying the well known rules for the interpretation of statutes we can not escape the conclusion that a person working in the cage at the bottom of the shaft is as much within the reason and intention of the statute as he is when going in and out of the mine.

The Illinois and Missouri statutes, under which the cases of *Litchfield Coal Co.* v. *Taylor,* 81 Ill. 590, and *Durant* v. *Lexington Coal Co.,* 97 Mo. 62, 10 S. W. 484, were decided, contained provisions imposing a duty upon the owners of a mine operated by shaft to provide suitable means of signaling between the bottom and the top thereof, and to provide safe means of hoisting and lowering persons in a cage covered with boiler iron, so as to keep safe, as far as possible, persons descending into and ascending out of the shaft, and requiring the top of each shaft and the entrance to each intermediate working vein to be fenced by gates. And both statutes contain this provision: "For any injury to person or property, occasioned by any wilful violation of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby." Laws Mo. 1881, p. 170; R. S. Ill. 1874, p. 708.

In the Missouri case counsel had argued that knowledge on the part of the injured party that the cage was not covered with iron, and that no contrivance had been provided for signaling from top to bottom, and that the top of the

shaft had no gates or other protection, should defeat the action. In answer to this the court said: "Such a declaration of law would in effect nullify the statute. Knowledge only by the plaintiff of the failure of the defendant to have the mine provided with these protections will not defeat the action. It must be remembered that the plaintiff, to prevail, must show a wilful violation or failure to comply with the statutory regulations. Our statute seems to be the same as that of Illinois, and it has been held there that, though the injured person may not have been entirely free from fault, still if the jury found that the wilful conduct of defendant resulted in injury, the verdict would be justified. *Litchfield Coal Co.* v. *Taylor,* 81 Ill. 590. But we do not say in this case that plaintiff could recover if guilty of negligence himself. There is evidence in this case that plaintiff was out of his place when in the cage, and that he should have pushed the pit car into the cage. On the other hand, there is evidence that he had direction from the pit boss to pull the car in, and that he had been provided with hooks to do the work as he did, and that he was not negligent. Whether he was guilty of negligence contributing to the injury was submitted to the jury on various instructions favorable to defendant." In the Illinois case the court used this language: "Where an action is brought to recover for an injury resulting from the negligence of another, which was not wanton or wilful, it is an essential element to a recovery that the plaintiff or party injured must have exercised ordinary care to avoid the injury, but, as we understand the authorities, where the injury has been wilfully inflicted an action may be maintained, although the plaintiff or party injured may not have been free from negligence." In that case the jury was instructed that if they believed from the evidence that decedent did not exercise due care and that his death would not have happened but for his own negligence they should find for the defendant. "Nor," said the court, "does the evidence justify the theory that the misconduct of the decedent materially contributed to the injury."

It is thus seen that under the Illinois and Missouri statutes an action did not lie unless there had been a wilful violation of the act or a wilful failure to comply with some of its provisions. Yet these amount to negligence only. To say that an injury resulted from a wilful failure to do a duty is not saying that the injury was wilfully inflicted. The Indiana statute gives a right of action for an injury occasioned by any violation of the act, and also for an injury occasioned by the wilful failure to comply with the act. Each means negligence only. While there can be no such thing as wilful negligence, *Miller* v. *Miller*, 17 Ind. App. 605, yet there may be degrees in negligence. *Terre Haute, etc., R. Co.* v. *Graham*, 95 Ind. 286. But whether negligence be slight, ordinary, or gross, it is still negligence, and if the defendant is simply charged with negligence, contributory negligence is a defense. The complaint in the case at bar seeks redress for a negligent omission of duty and not for an injury wilfully inflicted.

In *Island Coal Co.* v. *Greenwood*, 151 Ind. 476, it was held, in an action under this statute, that where the employe had an opportunity equal with that of the company to ascertain the danger of coal falling from the roof of the place where the employe was working, there could be no recovery. Such a case was held to be not unlike the caving in of a gravel pit which has been held a danger alike open to the observation of employer and employe, citing, *Vincennes, etc., Co.* v. *White*, 124 Ind. 376; *Swanson* v. *City of Lafayette*, 134 Ind. 625.

The case of *Island Coal Co.* v. *Sherwood*, 153 Ind. 699 was reversed upon the authority of *Island Coal Co.* v. *Greenwood, supra,* and the following cases cited: *Victor Coal Co.* v. *Muir*, 20 Col. 320, 38 Pac. 378, 46 Am. St. 299; and *Queen* v. *Dayton Coal Co.*, 95 Tenn. 458, 49 Am. Rep. 935, 32 S. W. 460.

In *Queen* v. *Dayton Coal Co., supra,* it was held that the employment of an infant in a mine in violation of a statute

making such employment a misdemeanor was negligence *per se,* and that in an action for injuries sustained in such employment contributory negligence is available as a defense.

In *Victor Coal Co.* v. *Muir, supra,* appellee was injured by a rock falling from the roof of a mine where he was working. A statute of that state, in many respects similar to the Indiana statute, made it the duty of the owner of a coal mine to employ a mining boss whose duty, among other things, was to see that all loose coal, slate and rock overhead were carefully secured against falling in or upon the traveling ways, made it a misdemeanor for any person wilfully to neglect or refuse securely to prop the roof of any working place under his control, and provided: "For any injury to person or property occasioned by any violation of this act, or any wilful failure to comply with its provisions by any owner or lessee or operator, of any coal mine or opening, a right of action against the party at fault shall accrue to the party injured for the direct damages sustained thereby." It was held that contributory negligence was a bar to appellee's action.

It will be noticed that the sections of the Colorado and Indiana statutes giving the right of action are in substance identical. Although the court in the Colorado case has construed the expression a "wilful failure to comply with the act" to mean wilful negligence, yet the opinion rests upon the injured party's right to maintain the action because of the company's negligence and not because of an injury wilfully inflicted.

It is true the statute, §7473, *supra,* gives a right of action to the person injured. But this right would have existed by virtue of the common law and independently of that section. Neither that section nor the rest of the act undertakes to say what the suitor shall do or what he shall be excused from doing in order that he may maintain the action. When the act was passed, the doctrine of contributory negligence and assumption of the risk was established

through repeated decisions of the courts. There is nothing in the act which shows in any way that the purpose of the legislature was to change that doctrine. Under the act the company's negligence is made out by showing the violation of the statute. It says nothing about the fault, if any, of the injured party. There is nothing in the act that indicates that the legislature intended the injured party might recover for the company's negligence although himself at fault. We can not read this into the statute. If there is nothing in the statute which manifestly requires a different construction it must be construed according to common law principles. As we construe the statute, it conferred no special right of action in terms. It simply makes the failure to comply with the provisions of the act, whether a negligent failure or a wilful failure, an act of negligence *per se* on the part of the mine owner, agent, or operator. As such the contributory negligence of the party suing is available as a defense.

As the defect in the covering of the cage was open and obvious and one which could be readily seen by appellant had he looked, we must conclude from the averments of the complaint that the risk of danger from falling coal was assumed by appellant. The demurrer was properly sustained.

Judgment affirmed.