Attilio Poli, Appellee, v. The Numa Block Coal Company, Appellant.

**Mines and mining:** DEFECTIVE MACHINERY: NOTICE: VICE-PRINCIPAL.
1 One placed in immediate charge and control of men and of the work as well as of the place, as the pit boss of a mine, is a vice-principal to whom the workmen may naturally look as the representative of the master; and notice by workmen to a pit boss of an insufficient covering to the cage or elevator of the mine, as in this case, was notice to the master; and the workmen had the right to rely upon the promise of the pit boss to repair the same.

**Same.** The master is conclusively presumed to know of a defect
2 in machinery pertaining to the manner of its original construction.

**Same:** NEGLIGENCE OF MASTER: VIOLATION OF STATUTORY DUTY: AS-
3 SUMPTION OF RISK. Statutory regulation of the manner in which a particular work shall be carried on, involving the protection of employees exposed to special hazards, is a proper exercise of the police power of the state; and in so far as the negligence of the master constitutes a violation of a special and specific statutory regulation of this character he can not avail himself of the plea of assumption of risk, in an action for resulting injury to a servant for whose protection the law was enacted. Thus an employee does not assume the risk of injury arising from the master's violation of the statute requiring him to provide a proper cover to the cage or elevator of a mine.

**Same:** SAFE PLACE TO WORK: CONTRIBUTORY NEGLIGENCE. An employee
4 who has notified the master of a defect in the machinery which he is operating and has received a promise of its repair may wait a reasonable time for the same to be repaired without subjecting himself to the charge of contributory negligence, unless the hazard is so great that no reasonably prudent person would

continue in the work. And in the instant case the question of plaintiff's negligence in continuing to work with a cage or mine elevator having an insufficient cover, after notice to the master, was for the jury.

**Same:** LICENSED EMPLOYEES: NEGLIGENCE: STATUTE. The statute requiring a mine operator to employ only licensed engineers and pit bosses does not make such employes *quasi* officers of the state, so as to relieve the employer from liability for their negligence.

**Verdict:** PASSION AND PREJUDICE. In this action a verdict for $3200 for a permanently crippled hand is held not so excessive as to indicate passion and prejudice.

*Appeal from Wayne District Court.*—HON. H. K. EVANS, Judge.

WEDNESDAY, OCTOBER 26, 1910.

ACTION to recover damages for personal injury. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*Miles & Steele,* for appellant.

*Wilson & Smith* and *Poston & Murrow,* for appellee.

WEAVER, J.—The defendant operates a coal mine in which at the time of the accident in question the plaintiff was employed. He had considerable experience in the ordinary work of mining or digging coal, and was engaged in this class of work until a short time prior to his injury, when he took the position of cager. The shaft in which the cage or hoist was operated was two hundred and forty feet in depth. Plaintiff's place of work was in the entry at the foot of the shaft. The cage was constructed with an open floor or platform at the bottom, on which were two parallel rails corresponding in gauge with the rails on which the coal cars in the mine were operated. In

hoisting coal the cage was first lowered to the bottom, where the platform to which we have referred rests on a level with the car tracks in the entry. The duty of the cager is then to push the loaded cars from the tracks in the entry to the platform of the cage, which is then hoisted with its load to the surface. The business of coal mining in this state has been made the subject of statutory regulation, and among the safety appliances which the operator must provide are "proper covers overhead on all cages." Code, section 2489. The precise purpose of such covers is not definitely expressed in the statute, but quite obviously they are intended to protect the employees and others who may be upon a cage or in the shaft beneath from injury by the falling of coal or other heavy substances from the top. See *Bodell v. Coal Co.,* 25 Ind. App. 654 (58 N. E. 856); *Durant v. Coal Co.,* 97 Mo. 62 (10 S. W. 484). The cage in defendant's mine was provided with a cover, but plaintiff alleges, and there was evidence tending to show, that it was considerably smaller than the shaft through which the cage was hoisted and lowered. The platform or floor of the cage was of a size to nearly fill the shaft, but the cover, or bonnet as it appears to be called in miners' parlance, was narrower, leaving an opening variously estimated at from ten to fourteen inches in width through which a lump of coal falling from the top could pass to the floor. On the day in question, the plaintiff in the discharge of his duty as cager undertook to push a loaded coal car from the entry to its place upon the platform of the cage, and in so doing his hand, resting upon the car, was extended out from the shelter of the entry into the shaft and under the opening between the bonnet and the wall. In doing this a lump of coal falling from the top struck his hand, perforating it, breaking some of the bones, and leaving that member to a material extent in a permanently crippled condition. It is the claim of plaintiff that this injury is chargeable

to the negligence of the defendant in failing to provide a larger and more effective covering for the cage. The defendant takes issue upon the charge of negligence, denies that plaintiff exercised due care for his own safety, and alleges that he knew the condition under which the work was being done, and assumed the risk therefrom. It is also alleged that the negligence, if any, from which the plaintiff suffered injury, was that of a fellow servant. There was trial to a jury, and verdict and judgment for plaintiff in the sum of $3,200, and defendant appeals.

I.   There was evidence tending to show that, having observed the insufficient covering of the cage, plaintiff called the attention of the pit boss to its condition, and the latter

1. MINES AND MINING: defective machinery: notice: vice-principal.

assured him he would fix it "as soon as possible," or "as soon as he could," or "had a lay-off," and the plaintiff, relying on the assurance thus given, continued the work. Appellant argues that a notice to the pit boss was not notice to the company, and that plaintiff was not authorized to rely upon his promise to repair. For reasons stated in a subsequent paragraph of this opinion, the question thus raised is not of controlling importance, but we think the notice was sufficient, and the plaintiff was entitled to rely upon the promise of the pit boss as the promise of the employer. He was the person who employed the plaintiff and other operatives in the mine, and he had authority to discharge them. He had immediate charge of the actual underground operations, and, if any defect or dangerous condition therein was called to his attention, it was his duty either to remedy it or to report it to the proper office or department within whose scope such work properly belonged. The duty of the company to provide a safe place to work could not be delegated or left to the discretion of a servant, nor could it leave the operation of its mine or shaft without the responsible care and foresight of some person, and escape all responsibility until some

miner or cager should hunt up the directors or managers, and serve formal notice upon them. The boss in immediate charge and control of the men and of the work as well as of the place is the one to whom they naturally and properly look as the representative of the corporation, and there is nothing in the record of this case to take it out from under the operation of this rule. *Wahlquist v. Maple Grove,* 116 Iowa, 720; *Beresford v. Coal Co.,* 124 Iowa, 44; *Coal Co. v. Swaggerty,* 159 Ind. 664 (62 N. E. 1103, 65 N. E. 1026); *Wellston v. Smith,* 65 Ohio St. 70 (61 N. E. 143, 55 L. R. A. 99, 87 Am. St. Rep. 547); *Coal Co. v. Wombacher,* 134 Ill. 57 (24 N. E. 627); *Meier v. Way,* 136 Iowa, 305; *Blazenic v. Coal Co.,* 102 Iowa, 706.

We can not say, therefore, as a matter of law that the pit boss was not in this instance a vice-principal, or that plaintiff was not justified in relying upon his promise to make the repair. It is to be noticed, also, that, as far as the merits of this case turn upon the question of notice to the company of the alleged defect, the fault, if one there was, pertained to the matter of the original construction of the cage covering, and notice of its condition is therefore conclusively presumed.

*2. Same.*

II. Appellant argues, also, that, even if it be found that defendant was negligent in the matter of its statutory duty to furnish a proper cover for the cage, plaintiff should be held as a matter of law to have assumed the risk because the danger therefrom was obvious, and he knew the conditions of which he now complains. In support of this contention, we are cited to *Sutton v. Bakery Co.,* 135 Iowa, 390. It is to be conceded that in the opinion referred to an expression is used to the effect that, if there was a breach of statutory duty by the employer with reference to a safety device, plaintiff was nevertheless not absolved from the consequence of his voluntary assump- ·

*3. Same: negligence of master: violation of statutory duty: assumption of risk.*

tion of the risk. The case was one in which the plaintiff's contributory negligence was so obvious that the court was united in the opinion that the order of the district court in directing a verdict for defendant should be affirmed. In disposing of the appeal, the opinion went somewhat beyond the last ground here mentioned, and made use of the language upon which appellant now relies without any general discussion of the question as to the effect of statutory regulation upon the application of the rule of assumption of risk. In the case before us, we are for the first time confronted with a record which seems to render necessary a definite pronouncement upon this phase of the law of negligence, and we are disposed to treat it as *res integra* in this jurisdiction. Statutory regulation of the manner in which any particular line of business shall be carried on is an exercise of the police power of the state, and is intended in some instances as an instrument of protection to the public generally, and in others as a protection to certain classes of employees exposed to special hazards. For example, a statute regulating the speed of railway trains or of street cars in cities and towns is meant primarily for the benefit of the general public in the use of the public ways and crossings, while a regulation which compels the operator of a mill or factory to place hoods over his circular saws or to box or cover exposed gearings is meant primarily for the protection of his employees whose duties expose them to contact with these dangerous instrumentalities. In cases of the first class we have held that an employee may assume the risk of the known and habitual disregard of his employer of a statute or ordinance regulating in the interest of the public safety the operation of a railroad. *Martin v. Railroad Co.*, 118 Iowa, 148. The same thought is reflected in *Sweeney v. Railroad Co.*, 57 Cal. 15, and *Fleming v. Railroad Co.*, 27 Minn. 111 (6 N. W. 448); but the reasons which have been thought controlling in these cases

· have · much less persuasive force when considered in connection with a case of the other class.   Notwithstanding the absolute liberty with which every individual is legally endowed to enter into contract for his personal labor or service and his equal legal right to abandon such service at any time subject only to liability for damages in case such act be not justified, it is nevertheless true in practical life that poverty, scarcity of employment, dependent family, and other circumstances often impose moral compulsion upon the laborer to accept employment upon such terms and under such conditions as are offered him, and it is in recognition of this fact, as well as the further fact that society has a direct interest in preserving the lives and promoting the well being of all persons engaged in productive industry that laws have been enacted to protect them against unnecessary hazard of injury by failure of employers to exercise proper care for their safety.   Freeman's note to *Wellston v. Smith,* 87 Am. St. Rep. 584; *Kilpatrick v. Railroad Co.,* 74 Vt. 288 (52 Atl. 531, 93 Am. St. Rep. 887) ; *Iron Co. v. Harbison,* 183 U. S. 13 (22 Sup. Ct. 1, 46 L. Ed. 55) ; *Harbison v. Iron Co.,* 103 Tenn. 421 (53 S. W. 955, 56 L. R. A. 316, 76 Am. St. Rep. 682) ; *State v. Brown,* 18 R. I. 16 (25 Atl. 246, 17 L. R. A. 856) ; *Holden v. Hardy,* 169 U. S. 366 (18 Sup. Ct. 383, 42 L. Ed. 780) ; *McGuire v. Railroad Co.,* 131 Iowa, 340.

To say that the Legislature in enacting these measures of protection which in some degree equalize the advantages of employer and employee and afford a needed protection to the person and lives of the latter intended that a master might violate the statute to the injury or death of his servant, and then escape liability by pleading and proving that his offense against the law was habitual, obstinate, and notorious, is inconsistent with justice and, it is hardly extravagant to say, repugnant to good morals.   Such a rule offers a premium to contemptuous disregard of the

statute, and robs it substantially of all value to the class in whose interest it was enacted. These statutes being to a great extent the product of comparatively recent legislation, it is only natural that the expressed views of the courts of different jurisdictions have not been entirely harmonious with respect to their operation and effect, but the decided weight of the precedents supports the view we have above indicated that, where the negligence charged constitutes the violation of a statute enacted for the servant's benefit, the master can not avail himself of the plea of assumption of risk against the consequences of his own wrong. The holdings to this effect are so numerous that to attempt an exhaustive citation would unduly extend this opinion. The leading cases of this class are collected in 26 Cyc. 1181, notes 61, 62; Cyc. Annotations for 1910, 2533; 20 Am. & Eng. Ency. Law (2d Ed.) 121; *Hall v. West,* note, 4 Am. & Eng. Ann. Cas. 599; *Bromberg v. Evans,* note, 13 Am. & Eng. Ann. Cas. 36.

A few eminent courts—notably those of Massachusetts and New York—have reached the opposite conclusion, but the reasoning on which it is based does not appeal to us as controlling, and serves to unduly narrow the effect, if it does not substantially defeat the evident purpose, of the legislation. Among the courts upholding the view we here adopt are those of Indiana, Michigan, Washington, Oregon, Kansas, North Carolina, Louisiana, and Missouri. Such, also, seems to be the trend of judicial opinion in England (*Weblin v. Ballard,* L. R. 17, Q. B. Div. 122), and in Canada (*McCloherty v. Gale,* 19 Ont. App. 117; *Rogers v. Hamilton,* 23 Ont. App. 425). A like conclusion has been reached in Illinois, where the negligence alleged was the failure of a coal mine operator to furnish a proper light at the bottom of a shaft, and defendant sought to avoid liability because of the injured servant's knowledge that this regulation was not obeyed. The court there says: "The statute expressly requires the mine owner to furnish

a sufficient light at the top and bottom of the shaft to insure so far as possible the safety of persons getting on and off the cage. To excuse the owner from a compliance with said statute upon proof that the miner knew that the owner was violating it would be to repeal the statute." *Coal Co. v. Palling,* 210 Ill. 342 (71 N. E. 371). We shall not extend this opinion for further quotation from the cited cases. They afford much interesting reading upon one of the most important features of the law of negligence as affected by modern legislation, and the logical soundness of the conclusion reached appears to us to be unassailable.

It follows that, in so far as the negligence charged in the case at bar was a violation of an express and specific statutory regulation, the appellant can not avail itself of the plea of the assumption of risk in an action for resulting injury to a servant for whose protection the law was enacted. It should perhaps be noted before leaving this branch of the case that some leading precedents emphasize a distinction between statutory regulations which are stated in general terms and are but little more than re-enactments of the common law and those which prescribe specific means or methods for the protection of the servant, and hold that, while there can be no assumption of risk attending a violation of the latter, the defense may still avail in the former. The case before us does not call for a determination of the question thus suggested, and we make no pronouncement upon it.

III. We are further asked to hold as a matter of law that the plaintiff was guilty of contributory negligence. The record will not justify the holding. He was performing the duty placed upon him in the usual way, and counsel do not suggest what he did or omitted to do for his own protection against the hazard from falling coal. True he might have refused to work, but, having called the attention of his employer to the condition of

4. SAME: safe place to work: contributory negligence.

things and having received its promise to repair, the law did not require him to at once cease work and lose his job, or to continue work at his own. risk.   He could wait at least a reasonable time for the work of repair to be done without being charged with contributory negligence unless the hazard was so great that no reasonably prudent person would expose himself to it.   Whether such conditions existed was a jury question.

IV.   Counsel argue that, as the company was by law required to employ only duly licensed engineers and pit bosses, these persons were to be treated as *quasi* officers of the state, and that for their negligence the employer is not liable.   The proposition does not appeal to us as being reasonable or sound.   The statute is not intended to relieve the mine operator from any of his common-law liabilities, but rather to add thereto by imposing upon him certain specific duties intended to safeguard the persons and lives of his servants who are engaged in a work which exposes them to many dângers.   The licensed engineer and licensed pit boss so far as their work or duty pertain to the nondelegable obligations of the master are none the less his representatives because the law requires them to possess certain prescribed qualifications.   As we have already said, the negligence here complained of, being one which pertains to or inheres in the construction of the shaft or cage, is necessarily the negligence of the owner, and responsibility therefor can not be shifted to the engineer or to any other officer or servant.   The law cited by counsel which compels the master of a ship to employ a licensed pilot and under which there have been decisions which relieve the shipowner from the consequences of the pilot's negligence or incompetence are not in point.   If the shipowner sends to sea a vessel of such defective construction that it sinks while it is being taken out of the harbor, no one would contend that he is relieved from

5. SAME: licensed employees: negligence: statute.

responsibility for his negligence because a licensed pilot was in charge when the disaster occurred.

V.  Much complaint is made of alleged misconduct of counsel in argument.  Without undertaking to set out the various remarks and statements objected to we have to say that we find nothing calling for the interference of the court.  The debate was doubtless spirited, and the record is not without indication that counsel for appellant was inclined to indulge in nagging interruptions and objections to the course of the closing argument and this had its usual result in spurring the orator to more fiery and exaggerated declamation than would otherwise have been indulged in. Nothing is disclosed in the argument which was so far outside of the record that we can say any prejudice therefrom to the appellant was possible.

It is also objected that the recovery was excessive. The damages awarded were liberal, but we do not regard them so excessive as to indicate that the verdict was influenced by passion or prejudice.

6. VERDICT: passion and prejudice.

There is no reversible error in the record, and the judgment of the district court is *affirmed.*