OF THE

STATE OF IOWA

AT

DES MOINES, JANUARY 1913, TERM,

AND IN THE SIXTY-SEVENTH YEAR
OF THE STATE.

---

H. A. MURRAY, Appellant, v. SWANWOOD COAL COMPANY,
Appellee.

**Master and Servant:** NEGLIGENCE: EVIDENCE. It is the duty of an
employer to furnish his servant a reasonably safe place to work, and
to keep the same in reasonable repair, which the servant may
assume has been done, and that he may safely perform the serv-
ice in the exercise of reasonable care. In the instant case the ques-
tion of whether the employer was negligent in the construction of
an entry to a coal mine, resulting from the fact that cross timbers
were too low, was for the jury.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. Under the evidence in
this case the question of whether plaintiff, a mule driver in a coal

mine, who was caught between the top of his car load and the timbers supporting the roof of the entry, was for the jury.

**Same:**  ASSUMPTION OF RISKS.  The risks which a servant assumes as incident to his employment are such as remain or attach to the employment after the master has performed the duties which the law imposes upon him; he does not assume the risks arising from the master's failure to perform a legal duty, and one of the duties devolving upon the master is to furnish the servant a reasonably safe place to work.  Under the evidence in this case the question of whether plaintiff assumed the risk of being caught between the top of his load of coal and the timbers supporting the roof of the entry, was for the jury.

**Same:**  ASSUMPTION OF RISK:  STATUTE.  The statute providing that an employee does not assume the risks arising from an employer's failure to furnish safe machinery or a safe place to work, unless the danger is imminent, and that it shall not include risks incident to the employment, relates to machinery or appliances which are defective; so that the owner of a coal mine, who constructs and maintains the timbers supporting the roof of an entry too low for the safety of his employees is liable for an injury resulting therefrom, in the absence of evidence a showing that the condition was necessarily incident to the reasonable operation of the mine, and that the risk of injury did not follow the service as a matter of law.

*Appeal from Polk District Court.*—Hon. Wm. McHenry, Judge.

Thursday, December 12, 1912.

Action at law to recover damages for personal injury. There was a directed verdict and judgment for the defendant, and plaintiff appeals.—*Reversed.*

*S. B. Allen,* for appellant.

*Guernsey, Parker & Miller,* for appellee.

Weaver, J.—The plaintiff was employed as a mule driver in the defendant's coal mine.  He was a driver of experience,

and had been at work in this mine for several weeks. On the day in question he was caught and crushed between the top of the load on his car and the cross timbers supporting the roof of the entry at that point. He charges such injuries to the negligence of the company in that, first, reasonable care on the part of the company required it to so construct and maintain the entry as to afford a passage of at least five feet in height to enable the driver to safely pass thereunder with his mule and car, but that said roof, at the point where this injury occurred, was constructed or maintained at a height of but four feet; and, second, that due and reasonable care as aforesaid required that the company make such entry of sufficient width to afford room between a moving car and the rib of the entry for the escape of the driver in case it became necessary for him to jump from the car, but said entry, at the point in question, was so narrow that the driver could not escape from the car without being crushed against the rib. He avers that at the time of his injury he was driving his mule with a loaded car through the entry which was without light of any kind, except such as was afforded by the miner's lamp or candle attached to his cap; that, in accordance with the custom and his duty as driver, he was standing with one foot on the bumper of the car, and the other on the tail chain, one hand resting on the top of the car, the other on the rump of the mule, and his body bending low between the mule and the car to avoid collision with the roof timbers, when the mule began to kick, and, as plaintiff lifted himself up to avoid injury from the vicious animal, his head came into contact with the low place in the roof, forcing him back on the top of the loaded car, thus wedging him between the load and the roof, whereby he was severely injured. Upon this pleaded state of facts, and alleging that he did not contribute to his injury by his own negligence, he demands a recovery of damages. The defendant admits that plaintiff was injured in its mine, but denies all allegations of negligence on its part. It alleges further that plaintiff was guilty

of contributory negligence, and that he was fully aware of the conditions of which he complains, and assumed the risk of remaining in such employment.

The plaintiff's testimony fairly tends to show truth of his allegations as to the condition of the roof of the entry and the truth of his version of the circumstances immediately attending the accident. As to a material part of his testimony, he is corroborated by the testimony of others. No testimony was offered on the part of the defendant. The motion to direct a verdict was based on grounds as follows: First. The evidence shows no negligence on the part of the defendant. Second. Plaintiff does not show himself free from contributory negligence. Third. It conclusively appears that plaintiff assumed the risk of such injury. The trial court in sustaining the motion expressed the view: First, that, if it was negligence on the part of the defendant to maintain the entry in the alleged defective condition, "it was negligence for the plaintiff to work in that condition;" and, second, that as plaintiff had worked on that entry for a matter of five weeks passing daily and frequently under the alleged defective roof, he is bound, as a matter of law, to know its condition. "If he knew it, he is just as guilty of negligence as the defendant company. If he knew it, he assumed it as part of the risk that he undertook when he went into the employment of the defendant in passing through the entry." The foregoing statement of the record is sufficient for the consideration of the points brought to our attention by the briefs of counsel.

I. Was there evidence to go to the jury upon the question of defendant's negligence? Of this we think there can be no reasonable doubt. When defendant employed plaintiff

1. MASTER AND SERVANT: negligence: evidence.

to work as a mule driver in the entry of its mine, it assumed the duty of furnishing him a reasonably safe place to do that work. In entering such employment, plaintiff could rightfully assume and rely upon the performance of that duty by the employer.

He had the right to assume that the entry in which he was directed to work was so constructed that, in driving through it in the exercise of reasonable care on his own part, he would not be brought into collision with the timbering of either the roof or rib of such entry. If the witnesses in the case are to be believed, and their credibility was for the jury, while as a rule the distance from the car rail to the roof of the entry was five feet, and that such was the usual and customary height of entries in coal mines, there were, at the place of the accident, two low hanging timbers suspended at not to exceed four feet from the rail. Some of the witnesses make it less. Whether such a construction was negligent appears to us a fair question for the jury. When we stop to consider that under the roof of the entry, even when built to the full height of five feet, there must pass and repass mules drawing cars standing thirty-four inches in height above the rail, carrying loads rising six inches or more above the car, and bearing drivers crouched between car and mule, the whole structure with car, load, mule, and driver enveloped in thick darkness, save such illumination as may be given by the light in the driver's cap, it is clear that even under otherwise most favorable conditions the danger of collision between the driver's head and the roof above is, to say the least, never small. But when in such an entry, either by reason of a defect in construction or by reason of lack of repair, one or more of the cross timbers are permitted to drop a foot or more below the prevailing height of such passageway, it is difficult to imagine a more deadly peril for the driver who must use it. Counsel's answer to this is that the height of a mine entry cannot be controlled by custom or arbitrary rule, but the dimensions thereof must be governed by the natural conditions of rock and soil which are penetrated. Such answer is true only in part. In the first place, there is here no evidence whatever of any necessity for the condition of which plaintiff complains and his testimony tends to show did exist. In the next place, it is not easy to conceive of any

conditions to justify the hanging of one or two individual timbers below the general height of the roof on either side thereof, and if such conditions do exist, thereby creating unusual or special danger for the driver, the employer cannot avoid the charge of negligence except by showing that the injured employee had been warned of the danger or knew, or ought to have known, of its existence. We are satisfied, therefore, that, upon the question of defendant's negligence, plaintiff made a case for the jury. Quite in point in this branch of the case, see *Elk v. Fuel Co.*, 157 Iowa, —, decided by this court at the November period of the present term.

II.   But it is said plaintiff was himself negligent, and such it appears was the view of the court below. The statement in the ruling that, if it was negligent for the defendant

2. Same: contributory negligence: evidence.
to construct or maintain the entry as complained of, it was equally negligent for the plaintiff to work therein was probably not intended as the enunciation of a general rule, for, if it were such, then in no case could an employer ever be held liable for negligence in furnishing a proper place to work. We take it for granted that the court intended to hold that, if the defect complained of by the plaintiff existed, it must have been so patent to him, and was of such imminent character, that it must be conclusively held that no prudent man would take or remain in such employment, and he was therefore guilty of contributory negligence. We are not able to satisfy ourselves with that view of the record. It was no part of plaintiff's duty to care for the roof of the entry. That was the duty of the master. The defect complained of was not so manifest that plaintiff must have seen it, or that he must be guilty of negligence, as a matter of law, in not seeing it. It was not open and obvious. It was enveloped in impenetrable darkness save when a miner or driver passed with his lamp. Plaintiff, bending between his car and mule, could hardly be expected, certainly not as a matter of law, to be twisting his neck and head to search the roof above his

bended back for evidence that his employer was neglecting its duty in making the place reasonably safe. Even if he had seen these timbers prior to his injury and knew the existence of the danger, we are not prepared to say, as a matter of law, that reasonable prudence required that he should refuse to work or quit his job. He may in such case have reasonably believed that he could avoid the danger, and the fact that he had worked for several weeks without injury shows that it was possible to do so. Of course if, having such knowledge, he had voluntarily or carelessly lifted his head at that point and thus brought about the accident, he might well be charged with contributory negligence; but, if while bending over the heels of the mule to avoid such collision the animal became vicious and began to kick, it is not within the province of the court to say that he was negligent in suddenly lifting his head, even though in the excitement of the moment he lifted it high enough to be struck by the low hanging cross timbers. The law makes some allowance for the fallibility of human judgment when a person is placed in circumstances of imminent danger, and it would be establishing an extraordinary precedent to hold that one is conclusively chargeable with negligence because, when confronted with the necessity of instant choice between the danger of collision with the heels of a mule and collision with a crossbeam over his head, he chooses the latter as the lesser peril. We think the trial court erred in holding, as a matter of law, that plaintiff did not exercise ordinary care in entering or remaining in the employment in which he was injured. We do not overlook the point made by the appellee that, if the mule became vicious, it was because of misuse by the plaintiff. There was indirect evidence that plaintiff hit the mule with the sprag which he was carrying in his hand. But this fact was denied by the plaintiff. Moreover, such fact was at best a matter for the consideration of the jury upon the question of plaintiff's due care.

III.   The third and last proposition, and the one appar-

ently upon which defendant most strongly relies, is that of plaintiff's alleged assumption of the risk. Assuming, as we

3. SAME: assumption of risk.

think we must for the purpose of this appeal, that the evidence would warrant a finding of negligence on the part of the defendant in failing to provide plaintiff a reasonably safe place to work, then the risk arising therefrom was not one which plaintiff undertook in entering the defendant's employment. *Martin v. Electric Light Co.*, 131 Iowa, 734. If he is to be held as assuming the risk of defendant's negligence as at common law, it must be because he knew and appreciated the danger, or as a reasonable person in possession of his faculties ought to have known and appreciated it, yet chose to remain in the dangerous service. The reasons stated in the last paragraph why we cannot hold the plaintiff guilty of negligence, as a matter of law, are equally applicable to the claim that he assumed the risk of the danger arising from the defendant's negligence. The risks which a servant assumes as incident to his employment are such as remain or attach to the service after the master has discharged the magisterial duties which the law imposes upon him, and among these duties, as we have noted, is the furnishing of a reasonably safe place to work.

But there is a still more insurmountable obstacle to the assertion of this defense. A recent statute which had gone into effect prior to the date of plaintiff's injury provides as follows: "That in all cases where the prop-

4. SAME: assumption of risk: statute.

erty, works, machinery or appliances of an employer are defective, or out of repair, and where it is the duty of the employer from the character of the place, work, machinery or appliances to furnish reasonably safe machinery, appliances or place to work, the employee shall not be deemed to have assumed the risk by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employ-

ment it is the duty of such employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment. And no contract which restricts liability hereunder shall be legal or binding.'' Acts of 33d General Assembly, chapter 219. Appellee avoids the effect of this statute by saying that it evidently has no application to this case because the risk of the danger from which plaintiff suffered was one incident to his employment, and is therefore expressly excepted in the language of the statute itself. In support of this claim, counsel say: ''The entry was neither defective nor out of repair. It was in identically the same condition in which it had been placed when built. The low timbers, if any there were, and the alleged narrowness of the entry, had existed from the moment the entry was first driven. These conditions were not inherently dangerous; they did not constitute a want of repair; they were not in themselves defective; they had not relapsed or deteriorated from a previous better condition into the condition of which complaint is made. The entry was therefore neither defective nor out of repair. On the other hand, any man five feet or over in height, riding the chain, as the plaintiff was, was bound to get his head bumped if he straightened up. The vein of coal was not thick enough to admit of the entry being made higher. There are many veins in this state which are being worked which are less than three feet in thickness. Entries in the same mine vary in height. Obviously no entry could be put through them high enough to satisfy the plaintiff's demands.'' Here then, was a condition necessarily incident to the conduct of the business. Any one who entered the employment of the defendant company was necessarily exposed to injury from accident in case his head or body by

any means came forcibly in contact with the roof of the entry and the roof timbers. Surely, then, this is the sort of a situation which is meant by the latter clause of the statute, which says: 'But this statute should not be construed so as to include such risks as are incident to the employment.' We apprehend that what the statute means, taken as a whole, is that when the 'property, works, machinery or appliances' of an employer are inherently sound and not out of repair, and not inherently dangerous, and the dangers, if any, which are incident to their use, or being in contact with them, are open and obvious, or, if not open and obvious, are properly explained to the servant, then such risks are 'incident to the employment,' within the meaning of this statute. And, on the other hand, if such 'property, works, machinery or appliances' have by use or neglect become defective or out of repair, that then the risks incident to their. use in such defective or unrepaired condition are not 'incident to the employment,' and hence are not assumed. The only conceivable exception to the foregoing interpretation of the statute would arise in the case where 'property, works, machinery, or appliances' were of such an inherently dangerous character as that no ordinarily prudent person would maintain or operate them."

We have quoted the foregoing from the brief for the appellee in order that we may do no injustice to the views of counsel by any attempt to abbreviate them. To uphold the points so made would be to rewrite the law of master and servant and establish doctrines which in our view have never yet found judicial approval anywhere. Moreover, it assumes as fact many matters of which there is no evidence in the record. The fact, if it be such, that the entry when the plaintiff went to work was in the precise condition in which it was originally constructed is no answer to plaintiff's claim. There may be negligence or want of reasonable care in constructing the place where the servant is required to work, and, if so, it is universally held, both upon precedent and upon principle,

that liability is created where such faulty construction occasions injury to the servant without fault upon his part. Where such fact exists, we find no authority holding that the risk so created is one of the incidental hazards which the servant accepts in entering the master's employment. In entering such service, the servant may rightfully assume that the master has done his duty, and that he will be exposed to no dangers which are not ordinarily and naturally incident to work of that nature. *Bryce v. Railroad Co.* 103 Iowa, 665; *Spevack v. Coal Co.,* 152 Iowa, 90; *Taylor v. Railroad Co.,* 112 Iowa, 157; *Crown Coal Co. v. Hiles,* 43 Ill. App. 310; *Poli v. Coal Co.,* 149 Iowa, 104; *Fink v. Ice Co.,* 84 Iowa, 321; *Mosgrove v. Coal Co.,* 110 Iowa, 169.

There is nothing in the record to indicate that the existence of the two low hanging cross timbers arose from any engineering necessity. The fact that the coal vein was of no great thickness does not of itself indicate any such need. It is a fact of such frequent exposition and mention in coal mining cases we may treat it as a matter of common knowledge that the height of entries through which cars are operated is not limited by the thickness of the coal vein, and that the required height for the purposes of practical operation is often obtained either by taking down rock from the roof above or by taking up the floor or bottom from beneath sufficiently for the desired purpose. If conditions are sometimes found in which this cannot be done, they are not shown to have existed at the time and place under inquiry. It was not then a condition necessarily incident to the proper or reasonable operation of the mine, and the risk of it did not attach, as a matter of law, to the plaintiff's service. We are not sure that we fully comprehend the point of counsel's proposition that the conditions complained of in this entry were not "inherently" dangerous or unsound. It is true nothing appears to indicate any decay or weakness in the timbering rendering it liable to fall upon the driver, but these pieces did so encroach upon the open way, which was small at best, as to make them

a continual threat of injury to one driving under them. Such a structure, we think, may very properly be called inherently dangerous and, not being a risk which was necessarily incident to the plaintiff's employment, it does not fall within the exception to the statute upon which defendant relies. Nor can we assume to enlarge that exception by so construing the statute as to confine its application to cases where, to use the language of counsel, "the property, works, machinery, or appliances have by use or neglect become defective and out of repair." It is sufficient in this respect to say that such is not the language of the act, nor is there to be found therein any word, phrase, or sentence indicating a legislative purpose to thus narrow or restrict its ·meaning. In express words it relates to the property, works, machinery, or appliances of the employer which are defective *or* out of repair in cases where it is the duty ·of the employer to furnish a reasonably safe place to work. The employer's duty, as· we have seen, is first to *provide* a safe place to work, and then to *maintain* it in reasonable repair for the protection of the employee. A defect in such place may arise from neglect of either duty, and the statute in clear terms is made applicable to both. The case as presented in the record comes within the operation of the statute, and should have been submitted to the jury.

For the reasons stated, a new trial must be ordered. The judgment appealed from will be reversed, and cause remanded for further proceedings in harmony; with the views expressed in this opinion.—*Reversed.*